281 N.J. Super. 565 (1995)
658 A.2d 1314
DANIEL MCLAUGHLIN AND KAREN MCLAUGHLIN, PLAINTIFFS-APPELLANTS,
v.
ACME PALLET COMPANY AND BERRY INDUSTRIES GROUP, INC., DEFENDANTS-RESPONDENTS, AND U.S. GYPSUM, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 11, 1995.
Decided June 6, 1995.
*566 Before Judges STERN, KEEFE and HUMPHREYS.[1]
William L. Gold argued the cause for appellants (Brown, Gold & Beck, attorneys).
Michael D. Andolino, III argued the cause for respondent Acme Pallet Company.
*567 Richard M. Chisholm argued the cause for respondent Berry Industries Group, Inc. (Sellar, Richardson, Stuart & Chisholm, attorneys; Ian C. Doris, on the brief).
KEEFE, J.A.D.
Plaintiffs appeal from the entry of summary judgment in favor of defendants Acme Pallet Co., Inc., incorrectly pleaded as Acme Pallet Company (Acme), and Berry Industrial Group, Inc., incorrectly pleaded as Berry Industries Group, Inc. (Berry). The focal issue on appeal is whether the trial judge erred in refusing to apply the theory of alternative liability to these defendants.[2] For the reasons stated herein, we conclude that the trial judge did not err and affirm the judgment under review.
On May 25, 1990, plaintiff Daniel McLaughlin, an employee at a Home Depot in Clifton, was injured when buckets of joint compound manufactured by defendant U.S. Gypsum (Gypsum) fell off of a pallet that broke when he was lifting it with a forklift. Plaintiff and his wife, Karen (plaintiffs), filed a product liability action against Gypsum, which had loaded the pallet with its product at its factory and had arranged for the loaded pallet's shipment to the Home Depot store by a common carrier. Plaintiffs' liability theory was that, although the pallets were designed properly to withstand the load placed upon them, the subject pallet was manufactured defectively. Unfortunately, the pallet was destroyed after the accident, thereby preventing anyone from identifying the manufacturer. However, at the time in question, Acme and Berry were the only two distributors of pallets to Gypsum. Thus, plaintiffs sued Acme and Berry, as well as Gypsum. No effort was made by plaintiffs to identify and sue Acme's and Berry's various manufacturing sources.
Because either Acme or Berry had distributed the pallet to Gypsum, plaintiff sought to hold them liable under the "theory of *568 alternative liability." Acme and Berry moved for summary judgment. Judge James T. Murphy granted their motions, holding that alternative liability did "not apply in this case as to defendants Berry and Acme," primarily because it was undisputed that not "all persons who could possibly have been responsible for ... [plaintiffs'] damage" were "before the court[.]" Plaintiffs later settled their action against Gypsum, and then filed this appeal.
In their main brief, plaintiffs maintain that the facts of this case are identical to the facts of Nopco Chem. Div. v. Blaw-Knox Co., 59 N.J. 274, 281 A.2d 793 (1971), a case in which the burden of going forward with the evidence was shifted to the defendants because the plaintiff was unable to prove which of the parties in the transportation-bailment chain caused damage to plaintiff's commercial drying machine. In the context of this case, plaintiffs contended that "because plaintiff identified the entire set of potential [distributors] as being Acme and Berry and because plaintiff could not show which of the defendants had manufactured the actual pallet in question, instead of dismissing the case on summary judgment, the Trial Court should have shifted the burden of proof to the defendants to exculpate themselves as in Nopco, supra."
Plaintiffs' reliance on Nopco is misplaced. The justification for transferring the burden of going forward with evidence to the defendants in that case stemmed from the fact that the bailment created a separate duty on each defendant toward plaintiff, and defendants were in a better position to explain how the machine was damaged than was plaintiff. Id. at 284, 281 A.2d 793. In this case, only one of the defendant distributors owed a duty to plaintiff  the one who shipped the defective pallet to Gypsum. On the other hand, one of the distributors never had possession of the pallet, unlike the defendants in Nopco who all had possession of the machine at one time.
Generally speaking, in a product liability case, plaintiff is obligated to prove that: 1) the product was defective; 2) the defect caused an injury to a plaintiff who was a foreseeable user of *569 the product; and 3) the defect existed when the product was "distributed by and under the control of defendant[.]" Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394, 451 A.2d 179 (1982). The latter element of proof known as "causation-in-fact is ordinarily an indispensable ingredient of a prima facie case[.]" Shackil v. Lederle Laboratories, 116 N.J. 155, 163, 561 A.2d 511 (1989).
"The purpose of the causation-in-fact requirement, besides assigning blameworthiness to culpable parties, is to limit the scope of potential liability and thereby encourage useful activity that would otherwise be deterred if there were excessive exposure to liability." Id. at 162-163, 561 A.2d 511. However, exceptions have been carved out of that rule where plaintiffs in product liability cases have been unable to prove cause-in-fact. One of those exceptions is alternative liability. Ibid. The root of this theory is found in Restatement, (Second) of Torts § 433B(3) (1965).
Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.
There are two essential requirements of the rule. First, there must be proof that the two or more actors joined as defendants acted "tortiously." Id. at comment g. Second, "all of the culpable defendants [must] have been joined in the action." Shackil, supra, 116 N.J. at 166, 561 A.2d 511; Restatement, supra, § 433B(3) comment h.
Summers v. Tice, 33 Cal.2d 80, 199 P.2d 1 (1948) is a classic example of the application of alternative liability. In that case, two hunters fired their guns in the direction of plaintiff. Plaintiff's eye was severely injured as a result of one of the gun shots. At trial, plaintiff was able to establish that both defendants were negligent because they discharged their guns in his direction, but plaintiff was unable to prove which defendant actually shot him. Although plaintiff was unable to prove causation-in-fact, the trial court concluded that the negligence of both defendants was the *570 legal cause of the injury and that both were responsible for the result. On appeal, the Supreme Court of California upheld the trial court's relaxation of the causation-in-fact requirement, reasoning that because both defendants were negligent toward the plaintiff, it would be unjust to require the plaintiff to isolate the responsible defendant. Id., 199 P.2d at 3. Consequently, the burden of persuasion was shifted to each defendant to exculpate himself. The failure to do so would result in liability for the entire damages.
Neither of the Restatement's requirements have been satisfied by plaintiffs in this case. Where alternative liability, or its offspring, market share liability, is used in a product setting, the tortious conduct is found in the fact that all such defendants have distributed a product sharing a common design defect. Sheffield v. Eli Lilly & Co., 144 Cal. App.3d 583, 192 Cal. Rptr. 870 (1983). The theory simply does not work when the defect is attributable to a manufacturing flaw. Id., 192 Cal. Rptr. at 880, n. 11. Because this is a manufacturing defect case, either Acme or Berry acted tortiously, not both. Thus, there was no justification to join both. Further, even assuming a common defect could have been proven, all culpable defendants were not joined. Plaintiffs could have attempted to identify and join the various pallet manufacturers who supplied Acme and Berry, but they did not do so. Contrary to plaintiffs' assertion in their brief, it is plaintiffs' burden to join all culpable parties. (This requirement is what distinguishes alternative liability from market share liability, wherein plaintiff need only join "substantially all" of the manufacturers who produced the defective product. Shackil, supra, 116 N.J. at 166, 561 A.2d 511).
More importantly, the trial court did not deprive plaintiffs of a remedy when it refused to apply alternative liability to Acme and Berry. Simply stated, plaintiffs were able to prove causation-in-fact. If, as plaintiffs claim, the pallet was defectively manufactured, it was necessarily defective when it was in the control of Gypsum. That is all plaintiffs needed to prove in order to satisfy *571 the causation-in-fact requirement. Strict liability in tort extends to all entities in "the chain of distribution," and Gypsum was in the chain of distribution. Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 510, 562 A.2d 202 (1989). The pallet was as much its product for strict liability purposes as the joint compound that it manufactured. It does not matter that Gypsum did not create the defect or recognize the defective condition before it was shipped to Home Depot. "[T]he essence of a prima facie case of liability is proof that defendant placed a defective product in the stream of commerce. As a matter of law, the seller is presumed to know of the defect[.]" Ibid. Stated succinctly, plaintiffs were in a position to obtain full relief from a responsible party in the chain of distribution, Gypsum, without resorting to any burden shifting theory created as an exception to the requirement that a plaintiff prove causation-in-fact.
Affirmed.
NOTES
[1] Judge Humphreys did not participate at oral argument but has joined in the opinion with the consent of counsel.
[2] Plaintiffs concede that if we affirm the trial judge in respect of that ruling the other issues raised on appeal are moot.