673 A.2d 847

JOHN DAWSON AND JUDY DAWSON, LOREN HALTER AND ADELAIDE HALTER AND GRANVILLE WILLIAMS AND JOYCE WILLIAMS, PLAINTIFFS–APPELLANTS, v. BUNKER HILL PLAZA ASSOCIATES, SOUTHERN PINE INSPECTION BUREAU, BOWATER LUMBER CO. AND MANNA CRANE SERVICE, INC., DEFENDANTS–RESPONDENTS AND CROSS–RESPONDENTS, AND COHEN–SHATZ INVESTMENTS, LENOARD COHEN, KENNETH SHATZ, STEVEN A. NEIBERG, RAPS INVESTMENTS, WILLIAM P. BOWMAN, DENNIS POWELL, GLENDALE CAMPUS ASSOCIATES, GLENDALE BUILDERS, INC., U.S. COMPONENTS, INC., WEYERHAUSER, INC., GILMAN BUILDING PRODUCTS, MINARET DESIGN GROUP, VAL V. FAJARDO, MEHMET Y. ILTER AND BEMAX OF FLORIDA, INC., DEFENDANTS, AND HADDONFIELD LUMBER COMPANY, INC., DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 14, 1995—Decided April 10, 1996.

310

Before Judges MICHELS, VILLANUEVA and KIMMELMAN.

*A. John Falciani* argued the cause for appellants John Dawson and Judy Dawson (*Angelo J. Falciani*, attorney; *A. John Falciani*, of counsel and on the brief).

*Louis D. Fletcher* argued the cause for appellants Loren Halter and Adelaide Halter and Granville Williams and Joyce Williams, deceased.

*Thomas A. Shovlin* argued the cause for respondent and cross-appellant Haddonfield Lumber Company, Inc. (*Riley, Shovlin & Jones*, attorneys; *Mr. Shovlin*, of counsel and on the brief).

*John R. Gercke* argued the cause for respondent and cross-respondent Bunker Hill Plaza Associates (*Gercke, Dumser & Feld*, attorneys; *Mr. Gercke* and *Steven Antinoff*, of counsel and on the brief).

*Edward H. Keiper* argued the cause for respondent and cross-respondent Manna Crane Service (*Mr. Keiper* of counsel; *Alan P. Bruce,* on the brief).

No brief was filed on behalf of respondents and cross-respondents Southern Pine Inspection Bureau and Bowater Lumber Co.

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Plaintiffs John Dawson (Dawson) and Judy Dawson, Loren Halter (Halter) and Adelaide Halter, and Granville Williams (Williams) and Joyce Williams appeal from summary judgments of the Law Division entered in favor of defendants Bunker Hill Plaza Associates (Bunker Hill), Manna Crane Service, Inc. (Manna Crane) and Haddonfield Lumber Company, Inc. (Haddonfield Lumber) in this personal injury products liability tort action. Haddonfield Lumber cross-appeals from those portions of the summary judgments that dismissed its cross-claims against Bunker Hill, Manna Crane and defendants Bowater, Inc. and Southern Pine Inspection Bureau.

Plaintiffs Dawson, Halter and Williams were carpenters employed by I & B Builders and were injured while erecting and temporarily bracing prefabricated roof trusses on a building at the Bunker Hill Plaza Shopping Center in Washington Township, New Jersey. The trusses collapsed in a domino-like fashion, throwing the three plaintiffs to the concrete floor below. The trusses then fell on top of plaintiffs, causing serious personal injuries to each plaintiff. Expert opinion established that the trusses collapsed because they were inadequately braced.

Dawson, Halter and Williams instituted this action to recover damages for the personal injuries each sustained as a result of the accident, and their wives sued *per quod.* In addition to suing Bunker Hill, the partnership which owns the property; Manna Crane, the crane service on the construction project; and Haddonfield Lumber, a lumber supplier, plaintiffs also sued defendant

Glendale Builders, Inc. (Glendale Builders), the general contractor; defendants Joseph Vento, Kenneth Shatz, Leonard Cohen, William P. Bowman and Dennis Powell, Glendale Builders stockholders; U.S. Components, Inc., the manufacturer or fabricator of the roof trusses; Minaret Design Group and Val Fajardo, the architects on the project; Mehmet Ilter and Bemax of Florida, Inc., the engineers that designed the trusses; Bowater Lumber Co. (Bowater); Weyerhauser, Inc. (Weyerhauser), suppliers of wood for the trusses; Gilman Building Products (Gilman), a supplier of wood products; and Southern Pine Inspection Bureau (Southern Pine), an agency that provided guidelines for grading and inspecting lumber.

After issue was joined and discovery completed, the trial court granted summary judgment in favor of Weyerhauser and Gilman. Thereafter, the trial court granted summary judgment in favor of Bunker Hill, Manna Crane, Bowater and Southern Pine. The matter then proceeded against Glendale Builders, U.S. Components, Minaret Design, Val Fajardo, Bemax of Florida and Mehmet Ilter. Plaintiffs settled with these defendants and then appealed the summary judgments in favor of Bunker Hill, Manna Crane, Haddonfield Lumber, Bowater and Southern Pine. Haddonfield Lumber cross-appealed the dismissal of its claims against the other defendants. While the appeal was pending, plaintiffs settled with Bowater and Southern Pine, continuing the appeal solely against Bunker Hill, Manna Crane and Haddonfield Lumber.

Plaintiffs seek a reversal of the summary judgments in favor of Bunker Hill, Manna Crane and Haddonfield Lumber, contending that: (1) questions of fact were presented based on the contractual dispute between Bunker Hill and Glendale Builders concerning general contracting services; (2) sufficient evidence of involvement in the construction on the part of Bunker Hill existed to create a fact issue for the jury; (3) expert evidence of OSHA violations and other violations of customary trade practices and applicable codes established liability on Bunker Hill's part; (4) a jury question

existed concerning whether Manna Crane acted negligently and whether Manna Crane's negligence was a substantial factor in the collapse of the trusses; (5) a fact issue existed regarding whether Haddonfield Lumber is liable for selling defective component parts used by U.S. Components in the manufacture of the trusses; and (6) a *prima facie* case of negligence against Haddonfield Lumber was established based on their undertaking to determine the type and quantity of bracing material supplied.

We are satisfied from our study of the record and arguments presented that the trial court properly granted summary judgment in favor of Bunker Hill, Haddonfield Lumber and Manna Crane, and that no genuine issue of material fact existed which would preclude the grant of summary judgment in their favor whether the matter is viewed traditionally under *Judson v. Peoples Bank & Trust Co.*, 17 *N.J.* 67, 110 *A.*2d 24 (1954), or under the standard recently announced in *Brill v. Guardian Life Insurance Co. of America*, 142 *N.J.* 520, 666 *A.*2d 146 (1995). Moreover, we are satisfied that all issues of law raised by plaintiffs are clearly without merit. *R.* 2:11–3(e)(1)(E). Further comment, however, with respect to some of plaintiffs' contentions is appropriate.

## I.

### *SUMMARY JUDGMENT IN FAVOR OF BUNKER HILL.*

Plaintiffs contend that Bunker Hill, as owner of the property, owed a duty to them to supervise the means and methods of construction and could not be excused from that duty based upon an unsigned contract between it and Glendale Builders. Plaintiffs also contend that Bunker Hill is liable because it violated OSHA regulations and other customary trade practices in the construction of the project. We disagree.

"As a general rule, a landowner has a non-delegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers." *Kane v. Hartz Mountain In-*

*dus., Inc.,* 278 *N.J.Super.* 129, 140, 650 *A.*2d 808 (App.Div.1994), *aff'd,* 143 *N.J.* 141, 669 *A.*2d 816 (1996); *see also Cassano v. Aschoff,* 226 *N.J.Super.* 110, 114, 543 *A.*2d 973 (App.Div.), *certif. denied,* 113 *N.J.* 371, 550 *A.*2d 476 (1988). However, an owner is not responsible for harm which occurs to an employee as a result of the very work which the employee was hired to perform. *Kane, supra,* 278 *N.J.Super.* at 140, 650 *A.*2d 808. Under this well recognized exception to the general rule, "[t]he duty to provide a reasonably safe place to work is relative to the nature of the invited endeavor and does not entail the elimination of operational hazards which are obvious and visible to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform." *Sanna v. Nat'l Sponge Co.,* 209 *N.J.Super.* 60, 67, 506 *A.*2d 1258 (App.Div.1986) (citing *Wolczak v. Nat'l Elec. Prods. Corp.,* 66 *N.J.Super.* 64, 75, 168 *A.*2d 412 (App.Div.1961)). Stated differently, "[t]he landowner is under no duty to protect an employee of an independent contractor from the very hazard created by doing the contract work." *Ibid; see also Wolczak, supra,* 66 *N.J.Super.* at 75, 168 *A.*2d 412. Further, "[t]he landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly." *Wolczak, supra,* 66 *N.J.Super.* at 75, 168 *A.*2d 412; *see also Sanna, supra,* 209 *N.J.Super.* at 67, 506 *A.*2d 1258; *Cassano, supra,* 226 *N.J.Super.* at 115, 543 *A.*2d 973. A landowner, of course, will not escape liability if the landowner retains control "over the manner and means by which the work is to be performed, [or] where the work constitutes a nuisance *per se* or where one knowingly engages an incompetent contractor." *Cassano, supra,* 226 *N.J.Super.* at 113, 543 *A.*2d 973 (citation omitted); *see also Gibilterra v. Rosemawr Homes, Inc.,* 19 *N.J.* 166, 171, 115 *A.*2d 553 (1955); *Wolczak, supra,* 66 *N.J.Super.* at 73, 168 *A.*2d 412.

■ Armed with these principles, we are satisfied that the arguments regarding the unsigned contract between Bunker Hill

and Glendale Builders do not affect the facts in the record which establish that Glendale Builders had sole responsibility for work site safety as the general contractor for the project. Joseph Vento, the president of Glendale Builders, was on the site every day overseeing and supervising the construction. Glendale Builders hired and paid all the subcontractors on the project and ordered and paid for all the project equipment.

■ Although Bunker Hill's status as landowner imposed upon it a nondelegable duty to use reasonable care to protect invitees against known or reasonably discoverable dangers, and although independent contractors and their employees are generally the beneficiaries of that duty, plaintiffs have not made a *prima facie* showing that Bunker Hill breached its duty. Plaintiffs were employed by I & B Builders to install the roof trusses. These trusses eventually collapsed due to inadequate bracing. The danger of trusses collapsing was a recognized risk incident to the erection of such roof trusses. Plaintiffs' own expert conceded this point. Plaintiffs, as experienced carpenters hired to perform the very work that gave rise to their injuries, knew or should have known that the risk of collapse necessitated temporary bracing for the trusses.

Bunker Hill, as landowner, plainly did not owe a duty to plaintiffs, as employees of an independent contractor, to prevent injury from a risk which was incident to the very task they were hired to perform, and therefore is not liable to plaintiffs for the injuries they sustained in this accident.

Bunker Hill was entitled to rely upon and assume that Glendale Builders and its subcontractor, I & B Builders, had sufficient skills to safely erect roof trusses and take the steps necessary to protect their own employees from the risks incident to the work they performed.

Furthermore, contrary to plaintiffs' assertion, there is no basis in this record to conclude that Bunker Hill's active interference with the construction of the roof trusses was sufficient to trigger

liability. The record shows that the Bunker Hill partners had no experience with roof trusses and hired Minaret Designs, as architect, and Glendale Builders, as general contractor, to design and erect the structure. Glendale Builders then subcontracted the actual erection of the roof trusses to I & B Builders, who employed the three plaintiffs. While partners of Bunker Hill were occasionally on the job site, those partners did not and could not determine if the trusses were being installed properly and did not give any instructions with respect to the erection of the trusses. In fact, Vento testified that no partners from Bunker Hill ever gave him directions regarding his supervision of the job.

The cases relied upon by plaintiffs in an attempt to create a breach by Bunker Hill are distinguishable and do not compel a contrary conclusion. For example, in *Piro v. Public Service Electric & Gas Co.*, 103 *N.J.Super.* 456, 462, 247 *A.*2d 678 (App. Div.), *aff'd*, 53 *N.J.* 7, 247 *A.*2d 667 (1968); *Izhaky v. Jamesway Corp.*, 195 *N.J.Super.* 103, 107–08, 478 *A.*2d 416 (App.Div.1984); and *Sanna, supra,* 209 *N.J.Super.* at 68, 506 *A.*2d 1258, the landowners were actively involved in the construction and/or created the allegedly hazardous condition that gave rise to the accident and resultant injuries. Similarly, in *Black v. Public Service Electric & Gas Co.*, 56 *N.J.* 63, 69–70, 265 *A.*2d 129 (1970) and *Zentz v. Toop,* 92 *N.J.Super.* 105, 108, 222 *A.*2d 290 (App.Div. 1966), *aff'd sub nom., Zentz v. Toop v. Siegel,* 50 *N.J.* 250, 234 *A.*2d 96 (1967), the plaintiffs were injured by conditions on the landowner's property that preexisted their work and were not incident to the work performed. By contrast, Bunker Hill did not provide any materials for the project that resulted in the hazardous condition, nor was the cause of the collapse due to a preexisting condition on Bunker Hill's property. On the contrary, the hazard of the trusses collapsing was created by the very work that plaintiffs were hired by I & B Builders to perform.

Plaintiffs also seek to impose liability on Bunker Hill by asserting that it failed to follow certain OSHA regulations and trade practices during the project's construction. Plaintiffs correctly

note that the general rule of *Wolczak, supra,* was distinguished in *Meder v. Resorts International Hotel, Inc.,* 240 *N.J.Super.* 470, 475, 573 *A.*2d 922 (App.Div.1989), *certif. denied,* 121 *N.J.* 608, 583 *A.*2d 310 (1990). In *Meder,* we found that a "violation of the obligations imposed by the federal regulations supports a tort claim under state law." *Id.* at 477, 573 *A.*2d 922. We explained that OSHA regulations impose a duty to maintain a safe work place upon "the employer" which is defined as a "contractor or subcontractor." *Id.* at 476, 573 *A.*2d 922 (citing 29 *C.F.R.* §§ 1926.28(a) and 1926.32(k)). We also found that, according to OSHA regulations, "a prime or general contractor bears responsibility for all OSHA violations on the job . . . ." *Id.* at 476, 573 *A.*2d 922 (citing 29 *C.F.R.* § 1926.16). The *Meder* decision was most recently revisited in *Kane, supra,* 278 *N.J.Super.* at 141, 650 *A.*2d 808 and *Izzo v. Linpro Co.,* 278 *N.J.Super.* 550, 555–56, 651 *A.*2d 1047 (App.Div.1995). In *Kane,* we held that a "finding of an OSHA violation does not *ipso facto* constitute a basis for assigning negligence as a matter of law . . . ." 278 *N.J.Super.* at 144, 650 *A.*2d 808. In *Izzo,* we held that "[t]he absence of any OSHA regulation imposing a specific affirmative duty on the property owner is sufficient to warrant the grant of summary judgment" to the landowner. 278 *N.J.Super.* at 556, 651 *A.*2d 1047.

■ While OSHA regulations require a general contractor to comply with OSHA requirements, these regulations do not apply to owners such as Bunker Hill and do not impose any affirmative duty of compliance upon such owner. Consequently, there is no basis for imposing liability upon Bunker Hill for any alleged failure of its general contractor Glendale Builders or the latter's subcontractors, including I & B Builders, to comply with OSHA regulations. To visit liability upon Bunker Hill under such circumstances would be contrary to the public policy of this State which favors the general contractor as the "single repository of the responsibility for the safety of all employees of a job." *Kane, supra,* 278 *N.J.Super.* at 141, 650 *A.*2d 808.

In sum, the trial court properly granted summary judgment in favor of Bunker Hill.

## II.

### *SUMMARY JUDGMENT IN FAVOR OF MANNA CRANE.*

Plaintiffs also contend that the trial court erred in granting summary judgement in favor of Manna Crane because there was sufficient evidence that Manna Crane's negligence was a substantial factor in causing the collapse of the trusses and produced the subject injuries. Again, we disagree.

It is fundamental that in order to visit tort liability upon a defendant, a "plaintiff must prove tortious conduct, injury and proximate cause." *Ayers v. Jackson Tp.,* 106 *N.J.* 557, 585, 525 *A.*2d 287 (1987). "Proximate cause" has been defined as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Fernandez v. Baruch,* 96 *N.J.Super.* 125, 140, 232 *A.*2d 661 (App.Div. 1967), *rev'd on other grounds,* 52 *N.J.* 127, 244 *A.*2d 109 (1968). The burden of proof rests upon the plaintiff to prove a causal relationship by a preponderance of the evidence. *Vuocolo v. Diamond Shamrock Chem. Co.,* 240 *N.J.Super.* 289, 292, 573 *A.*2d 196 (App.Div.), *certif. denied,* 122 *N.J.* 333, 585 *A.*2d 349 (1990). Thus, a plaintiff must show that a defendant's conduct constituted a cause-in-fact of his injuries. *Kulas v. Pub. Serv. Elec. & Gas Co.,* 41 *N.J.* 311, 317, 196 *A.*2d 769 (1964); *Battista v. Olson,* 213 *N.J.Super.* 137, 148–49, 516 *A.*2d 1117 (App.Div.1986).

Even if damage would have occurred in the absence of a defendant's negligence, liability may still be imposed upon a showing that the negligent conduct was a substantial factor in causing the alleged harm. *See State, Dep't of Envt'l Protection v. Jersey Cent. Power & Light Co.,* 69 *N.J.* 102, 110, 351 *A.*2d 337 (1976). Therefore, there may be two or more concurrent and directly cooperative proximate causes of an injury. *Scott v. Salem*

*County Memorial Hosp.*, 116 *N.J.Super.* 29, 33, 280 *A.*2d 843 (App.Div.1971). Such causes need not be exclusively capable of producing the injury, they need only be a substantial factor in bringing about the harmful result. *Id.* at 34, 280 *A.*2d 843. Stated differently, "[l]iability attaches not only to the dominating cause but also to any cause which constitutes at any event a substantial factor in bringing about the injury." *Peer v. City of Newark*, 71 *N.J.Super.* 12, 28, 176 *A.*2d 249 (App.Div.1961).

Under New Jersey law, an expert's opinion must be based on a proper factual foundation. *Gribbin v. Fox*, 130 *N.J.L.* 357, 359, 32 *A.*2d 853 (Sup.Ct.1943), *aff'd*, 131 *N.J.L.* 187, 35 *A.*2d 719 (E. & A. 1944). In other words, "[e]xpert testimony should not be received if it appears the witness is not in possession of such facts as will enable him [or her] to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." *Vuocolo, supra*, 240 *N.J.Super.* at 299, 573 *A.*2d 196 (citation omitted). "This prohibition against speculative expert opinion has been labelled by modern courts as the 'net opinion rule.'" *Id.* at 300, 573 *A.*2d 196. "Under this doctrine, expert testimony is excluded if it is based merely on unfounded speculation and unquantified possibilities." *Ibid; see also Nesmith v. Walsh Trucking Co.*, 123 *N.J.* 547, 548–49, 589 *A.*2d 596 (1991); *Johnson v. Salem Corp.*, 97 *N.J.* 78, 91, 477 *A.*2d 1246 (1984); *Pelose v. Green*, 222 *N.J.Super.* 545, 549–51, 537 *A.*2d 745 (App. Div.), *certif. denied*, 111 *N.J.* 610, 546 *A.*2d 530 (1988).

In support of its argument that Manna Crane acted negligently and that its negligence was a substantial factor in the collapse of the trusses, plaintiffs offered the expert testimony of John E. Posusney, of Consulting Engineers, Inc. With respect to the negligence of Manna Crane and the issue of causation, Mr. Posusney, in part, concluded in his report of March 31, 1992 that:

Manna Crane was engaged under the direct supervision of Glendale Builders for the purpose of handling the trusses. However, Glendale Builders, specifically Joseph Vento, did not instruct and supervise the crane operator on the proper method of handling a truss in order to minimize these effects. It was Glendale Builders and Manna Crane's responsibility to do so and their failure contributed to

an increase in bending of the trusses during moving, lifting and setting, which contributed to difficulties in truss alignment and adversely affected their structural integrity and contributed to the collapse. Moreover, handling information was given to Glendale Builders as part of the BWT–76 document.

In our view, Mr. Posusney's opinion fell far short of that which was required to satisfy plaintiffs' burden in a case of this kind. Although Manna Crane is alleged to have somehow damaged the fifteen trusses in question by dragging them or by storing them on uneven ground or by lifting them by a single hook, there is no proof Manna Crane's actions were a substantial factor in causing the collapse of the trusses and plaintiffs' injuries. Plaintiffs' expert was unable to identify or establish that the trusses involved in the accident were the ones allegedly dragged, lifted or stored by Manna Crane. Thus, Mr. Posusney failed to establish that Manna Crane's actions were a substantial cause of the collapse of the trusses.

Beyond this, Mr. Posusney's report was simply a net opinion, which did not provide a factual foundation to support plaintiffs' claims. Even drawing all reasonable inferences in favor of plaintiffs and against Manna Crane, plaintiffs still have not made a *prima facie* showing of a causal relationship between the collapse of the trusses and Manna Crane's alleged negligent conduct to preclude summary judgment in favor of Manna Crane. Mr. Posusney opined that the crane operator stored the trusses on uneven ground, dragged trusses while moving them and lifted the trusses with a single hook, which structurally weakened the trusses and contributed to their collapse. However, Mr. Posusney admitted that he did not know if any of the trusses that were pulled along the ground were in fact damaged or even, if damaged, were among the trusses involved in the collapse. He also admitted that he did not know if any of the fifteen trusses involved in the collapse were stored on uneven ground. Additionally, Mr. Posusney conceded that he never visited the accident site and never physically examined the fifteen trusses involved in the collapse. In fact, Mr. Posusney admitted that he did not know if

any of the trusses with ruptured members were installed in the building.

The trial court properly concluded that Mr. Posusney's opinion was without factual support, reasoning:

> As to Manna–Crane, it is contended by plaintiff through their expert, John Posusney, that defendant Manna–Crane Service somehow damaged the 15 trusses in question by dragging these trusses and by lifting them with a single hook rather than using two points.
>
> However, plaintiffs' expert has never visited the site, has not examined any of the roof trusses installed at the Plaza or those removed from the accident scene, has not performed any quantitative engineering analysis to evaluate the stresses of the truss members from the single lift point operation.
>
> The opinions of plaintiffs' proposed expert are without, I believe, factual support and completely fail to explain a causal connection between the alleged conduct of defendant Manna–Crane and the collapse of the 15 trusses at Bunker Hill Plaza.

Consequently, the trial court properly granted summary judgment in favor of Manna Crane.

## III.

### SUMMARY JUDGMENT IN FAVOR OF HADDONFIELD LUMBER.

Finally, plaintiffs contend that Haddonfield Lumber is liable because it sold defective lumber parts used by U.S. Components in manufacturing or fabricating the trusses and inadequately determined the type and quantity of bracing materials needed for the trusses.

In a products liability case, plaintiff has the burden of proving that: (1) the product was defective; (2) the defect caused an injury to a plaintiff who was a foreseeable user of the product; and (3) the defect existed when the product left defendant's control. *McLaughlin v. Acme Pallet Co.*, 281 *N.J.Super.* 565, 568–69, 658 *A.*2d 1314 (App.Div.1995); *see also O'Brien v. Muskin Corp.*, 94 *N.J.* 169, 179, 463 *A.*2d 298 (1983); *Michalko v. Cooke Color & Chem. Corp.*, 91 *N.J.* 386, 394, 451 *A.*2d 179 (1982). The latter element of proof, known as "causation-in-fact", is an essential element of a *prima facie* case based in either strict liability or

negligence. *McLaughlin, supra,* 281 *N.J.Super.* at 569, 658 *A.*2d
1314; *Yun v. Ford Motor Co.,* 276 *N.J.Super.* 142, 151, 647 *A.*2d
841 (App.Div.1994), *rev'd on other grounds,* 143 *N.J.* 162, 669 *A.*2d
1378 (1996).

"'The purpose of the causation-in-fact requirement,
besides assigning blameworthiness to culpable parties, is to limit
the scope of potential liability and thereby encourage useful
activity that would otherwise be deterred if there were excessive
exposure to liability.'" *McLaughlin, supra,* 281 *N.J.Super.* at
569, 658 *A.*2d 1314 (quoting *Shackil v. Lederle Lab.,* 116 *N.J.* 155,
162–63, 561 *A.*2d 511 (1989)). Tortfeasors are generally responsi-
ble for their negligent acts that are a substantial factor in bringing
about a plaintiff's injuries. *Ettin v. Ava Truck Leasing, Inc.,* 53
*N.J.* 463, 483, 251 *A.*2d 278 (1969); *Rappaport v. Nichols,* 31 *N.J.*
188, 203, 156 *A.*2d 1 (1959). This rule is tempered by an impor-
tant corollary to the proximate cause rule that states "'the actor's
negligent conduct is not a substantial factor in bringing about
harm to another if it would have been sustained even if the actor
had not been negligent.'" *Kulas, supra,* 41 *N.J.* at 317, 196 *A.*2d
769 (citation omitted).

Here, plaintiffs' expert Mr. Posusney conceded that he
could not ascribe substantial factor status to any one lumber mill,
nor could he specify if the defective boards were actually in the
middle trusses that collapsed. Additionally, plaintiffs' timber
product specialist, James A. Taylor, testified that he did not think
the lumber itself triggered the collapse. In light of plaintiffs' own
experts testimony and reports, the trial court properly concluded
that even assuming that Haddonfield Lumber supplied some de-
fective boards, such was not a "substantial factor in causing the
trusses to collapse" or in bringing about plaintiffs' injuries. The
proofs tended to show that the trusses would have collapsed and
plaintiffs would have sustained their injuries even if Haddonfield
Lumber had not supplied defective boards.

Plaintiffs also contend that Haddonfield Lumber breached a
duty of care owed to plaintiffs by preparing a faulty estimate of

the bracing material needed to erect and support the trusses. In particular, plaintiffs point to the fact that although Haddonfield Lumber contracted with Glendale Builders to supply lumber to the work site, it voluntarily undertook to perform a bracing materials "takeoff" which Glendale Builders relied upon and which later proved to be insufficient and inadequate with respect to the type and quantity of bracing material needed to safely perform the construction. The proofs show that as a matter of sales practice, Haddonfield Lumber would formulate the amount of bracing material needed whenever a truss order was placed by U.S. Components. In this instance, Haddonfield Lumber's sales manager, Mark Massey, utilized blue prints supplied by Glendale Builders to prepare the estimate. In preparing the estimate, Mr. Massey relied principally on the dimensions of the building and the dimensions of the trusses supplied by Glendale Builders.

The law is well-settled that one who undertakes to render services to another, even absent a contract, may be found liable in tort for negligently performing or failing to perform the service gratuitously assumed. *See Dudley v. Victor Lynn Lines, Inc.,* 48 *N.J.Super.* 457, 468–69, 138 *A.*2d 53 (App.Div.1958), *rev'd on other grounds,* 32 *N.J.* 479, 161 *A.*2d 479 (1960); *Wells v. Wilbur B. Driver Co.,* 121 *N.J.Super.* 185, 203, 296 *A.*2d 352 (Law Div.1972). Although a party may have an obligation to see that the work it voluntarily undertakes for another's benefit is done in conformance with accepted standards of care, the duty to foresee and prevent a particular risk of harm from materializing should be commensurate with the degree of responsibility which the party has agreed to undertake. A lumber supplier may in certain instances be called upon to evaluate the safety of a bracing plan, but Haddonfield Lumber was not required to do that here. On the contrary, Haddonfield Lumber was merely asked to supply the lumber. While Haddonfield Lumber may have voluntarily prepared an estimate of the type and quantity of lumber needed to complete the project, it was never asked or expected to prepare a comprehensive bracing plan as recommended by the architect's

plans. In fact, Mr. Vento testified that the amount of bracing material required to complete the project was "always a guess" because the general contractor was never sure how much the carpenters would use. Mr. Vento also stated that he would order materials as needed. Clearly, the record established that Glendale Builders was ultimately responsible for the amount of bracing needed and that it did not rely on Haddonfield Lumber's estimate as to the amount of lumber needed. The responsibility for developing a bracing plan lay with Glendale Builders, not Haddonfield Lumber.

Moreover, Haddonfield Lumber was not asked to approve, evaluate or upgrade Glendale Builders' or I & B Builders' bracing plans, procedures or safety practices. Nor did Haddonfield Lumber have any input into how the bracing was to be constructed or undertaken or why all the available lumber on site was not utilized. Rather, Haddonfield Lumber merely prepared an estimate of the type and quantity of lumber needed to do the job. Under these circumstances, it would upset settled principles of tort law and considerations of fairness and policy to visit liability upon Haddonfield Lumber for any failures in bracing because it prepared a generalized estimate of the type and quantity of lumber needed to complete the project.

## IV.

Accordingly, the summary judgments in favor of Bunker Hill and Manna Crane and the summary judgment in favor of Haddonfield Lumber are affirmed substantially for the reasons expressed by Judge Holston in his oral opinions of January 7, 1994 and January 21, 1994 respectively.