**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0337-17T3

JASON RODRIGUEZ and
CHRISTINA RODRIGUEZ,
husband and wife,

       Plaintiffs-Appellants,

v.

MARNI MUELLER, ROBERT
MUELLER, and MICHAEL
LAXTON,

       Defendants,

and

FAITH SHEPPARD,

       Defendant-Respondent.

_____

> Argued March 5, 2019 – Decided August 15, 2019
>
> Before Judges Hoffman and Geiger.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1507-13.
>
> Stephen W. Guice argued the cause for appellants.

John Mastronardi argued the cause for respondent (Law Offices of Baumann & Viscomi, attorneys; Minos H. Galanos, on the brief).

PER CURIAM

In this rear-end-collision, automobile-negligence action, defendant Faith Sheppard conceded liability and a jury trial was held as to damages only. The primary issue at trial was whether plaintiff Jason Rodriguez[1] sustained injuries sufficiently serious to overcome the strictures of the verbal threshold statute. N.J.S.A. 39:6A-8(a).  After a jury found that he did not suffer such injuries, the trial judge entered a judgment of no cause for action. We now reverse that judgment, reinstate plaintiffs' complaint, and remand for a new trial.

I

This case arises from an accident which occurred in June 2011, when plaintiff was stopped in the drive-through lane of a McDonald's restaurant in Voorhees.  Defendant was in the drive-through lane when her foot became stuck between the brake and the gas pedal, causing her vehicle to accelerate forward and strike the rear end of the vehicle in front of her with sufficient force to cause that vehicle to propel forward and strike the rear of plaintiff's vehicle, which

---

[1]  In this opinion, we refer to Jason and Christina Rodriguez collectively as "plaintiffs", and Jason Rodriguez individually as "plaintiff."  Plaintiff's wife sues per quod.

A-0337-17T3

was then propelled into the vehicle in front of him. The resulting property damage to plaintiff's vehicle exceeded $3300.

Plaintiff's treating physicians certified that plaintiff sustained a fractured coccyx and related injuries in the accident. In September 2014, plaintiff underwent an independent medical examination by defendant's medical expert, Dr. E. Michael Okin, a board-certified orthopedic surgeon. According to Dr. Okin, he "did trauma surgery in a Level Two trauma center for like thirty-five years." In his initial report, Dr. Okin summarized plaintiff's treatment records, including the emergency room (ER) record following the accident. According to Dr. Okin, the ER record indicated:

> Chief complaint was motor vehicle accident with low back pain. X-rays were done and there appeared to be displaced fracture location of the lower portion of the sacrococcyx. Lumbosacral spine films demonstrated displaced fracture and dislocation of the lower portion of the sacrum, coccyx, otherwise unremarkable. He was placed on Motrin and Flexeril, and Percocet for pain.

Dr. Okin also reviewed the records of plaintiff's treating physicians, including the records of Dr. Keith Preis,[2] which he summarized, in relevant part:

> Saw him . . . in consultation on 3/24/12. Diagnosed with lumbar spine disc bulges L2-L3 through L5-S1 mostly L4-L5 and L3-L4. X-rays revealed a fracture of the superior coccyx . . . . his EMG revealed abnormality

_____

[2] Dr. Preis, a neurologist, served as plaintiff's pain management doctor.

A-0337-17T3

on the left L5 level . . . . Had been treating him with trigger point injection and percutaneous electrical stimulation. His last visit was on 10/20/12.

Following his medical record review and examination of plaintiff, Dr. Okin concluded plaintiff "incurred a lumbosacral spine sprain historically," which injury had resolved. Dr. Okin's report also included the following:

> Impression
>
> 1. Lumbosacral spine sprain
> 2. Normal examination of lumbar spine on today's examination.
> 3. Old fracture of coccyx, not related to this injury.

Dr. Okin then received the x-rays from plaintiff's ER visit and issued a supplemental report on November 13, 2014, setting forth his findings:

> [Plaintiff] had lumbarization[3] of the S1 vertebrae giving him a total of six lumbar vertebrae, otherwise, the x-rays are essentially completely unremarkable. There is some ossification at the inferior most distal portion of the coccyx, which may represent old trauma, but no acute trauma. There is no fracture of the sacrum.
>
> There are no fractures seen and the disc spaces are well-maintained. The impression is essentially normal x-rays of the lumbar spine.

---

[3] According to Dr. Okin, "[T]he sacrum is usually a solid bone. A lumberized sacrum means that the upper bone part of the sacrum didn't infuse with the lower part, so you have a disk space there[,]" resulting in "six lumbar vertebrae."

4

Dr. Okin issued a third and final report on January 20, 2015. He issued this report in response to an assertion by plaintiff's counsel that Dr. Okin "missed a fracture of the sacrum/coccyx" on plaintiff's ER x-ray. In response, Dr. Okin indicated he

> re-reviewed those x-rays and apparently it appears that [plaintiff] had what I felt was an old fracture of the coccyx, but not really a fracture, but a dislocation through the coccygeal intervertebral joint. . . . [Plaintiff] was the third car in a four[-]car collision. The first car struck the second car, which then moved into the third car, which was [plaintiff's] car. His vehicle was rear-ended and was pushed into the fourth car (car in front of his vehicle). He was sitting in his vehicle in a McDonald's line waiting to go to the window to get the food. The nature of the accident was one of rear[-]end collision, which caused forward and backward mechanism of injury. He was sitting on the car seat. A fracture of the coccyx first of all does not occur with that mechanism of injury. . . . [T]his fracture is old, has nothing to do with his injury involving the motor vehicle accident. In reality what is seen on x[-]ray is a dislocation through the disk space of the coccyx and not a fracture. There was no mechanism of injury for coccygeal fracture or dislocation.

In September 2015, defendant completed the videotape de bene esse deposition of Dr. Okin. In the deposition, defendant's attorney qualified Dr. Okin as an expert in "orthopedic surgery," without objection. Dr. Okin testified that plaintiff "had a lumbosacral spine sprain as a result of this accident. He had

5

a normal examination of lumbar spine during his exam. And he had an old fracture of the coccyx not related to this injury."

Dr. Okin concluded the coccyx fracture was "an old injury" because "[t]here's ossification at the interior most distal portion of the coccyx, which may represent old trauma but no acute fracture." He explained that "[o]ssification is bone formation," which "means that the body has already healed it or attempted to heal what was there. That's the body's mechanism of healing."

Dr. Okin then attempted to provide further support for his opinion, when he added, "Also, the mechanism would not be the cause of this fracture." Plaintiff's attorney immediately objected to this last testimony, noting that Dr. Okin "has been qualified as an orthopedic surgeon, not an accident reconstruction expert. And so, mechanism of injury goes to accident reconstruction and biomechanical engineering. And he is not qualified to make an opinion in that regard." Plaintiff's attorney lodged a "[s]tanding objection" to all such testimony. The balance of Dr. Okin's testimony included numerous references to the mechanism of plaintiff's injury.

Following the deposition, plaintiff filed a motion to edit the videotape of Dr. Okin's testimony, pursuant to Rule 4:14-9(f). Initially, defendant did not

oppose plaintiff's motion. Plaintiff finally received a letter brief in opposition to the motion on March 30, 2016, twelve days <u>after</u> the return date, along with notification that the judge assigned to try the case would hear the motion on April 22, 2016. The assigned judge did not reach the motion on that date and indicated she would hear the motion on April 25, prior to jury selection. On that date, before counsel appeared for the motion, they received notification not to appear as the assigned trial judge was ill. Counsel were then advised to appear before another judge the following day, April 26. At that time, the newly assigned trial judge decided to hear two defense in limine motions filed that date, regarding defense objections raised at the de bene esse videotape deposition of plaintiff's pain management expert. Instead of then addressing plaintiffs' long-outstanding motion to edit the trial testimony of Dr. Okin, the court elected to proceed with jury selection, and then went right into opening statements and trial testimony.[4] Plaintiffs were required to present the testimony of two of their medical experts before the court finally addressed plaintiff's motion on May 2, 2016.

---

[4] The record contains no explanation for beginning the trial before addressing plaintiff's motion to edit Dr. Okin's deposition.

A-0337-17T3

At the motion hearing, plaintiff's counsel did not challenge Dr. Okin's testimony that "this coccyx fracture is old," since Dr. Okin's review of plaintiff's x-rays and medical records obviously could provide him with a basis for articulating this opinion; however, he argued that Dr. Okin

> is not qualified to talk about the mechanism of injury . . . . [H]e not only doesn't have the qualifications, he doesn't even have the proper facts . . . . that could even allow him to talk about the mechanism of injury.
>
> . . . .
>
> To begin with[,] he would need all the photographs of all the vehicles so he could do a proper crash analysis because you can't do a crash analysis with[out] at least the photographs, you have to . . . evaluate . . . all the damages . . . [and] all the records from all the repairs done. . . .

At one point, the court agreed with plaintiff's counsel that if an expert testifies "as to the forces involved in an accident[,] which would cause certain things[,] that you have to have some sort of analytical, scientific approach"; however, the court then noted "there's no accident reconstruction expert involved in this case because liability is stipulated."

In response, plaintiff's counsel pointed out that

> [a]n accident reconstruction expert and a biomechanical expert testify about how the injuries are caused from the trauma from the impact, not necessarily just how the accident occurred. [Dr. Okin

8

is] not a biomechanical engineer. He can't say whether or not this coccyx fracture can be caused by this particular accident. . . .

The court rejected plaintiff's arguments, concluding that Dr. Okin did not testify as an accident reconstructionist, but as a doctor who knows how a coccyx is "generally injured," and who found "no evidence that it was injured that way in this case." The jury then viewed the video of Dr. Okin's de bene esse deposition with no redactions, the last testimony presented in the case.

After the jury returned its verdict, finding that plaintiff did not sustain a fracture of the coccyx in the accident, plaintiff filed a motion for a new trial returnable on June 10, 2016. The trial judge denied the motion fourteen months later, on August 11, 2017. This appeal followed.

II

We review decisions to admit expert testimony "against an abuse of discretion standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011) (citing Kuehn v. Pub Zone, 364 N.J. Super. 301, 319-21 (2003)). "However, [w]hen the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence, our review is de novo." Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012) (alteration in original) (internal quotation marks omitted).

9

There are three basic requirements for the admission of expert testimony:

1. the intended testimony must concern a subject matter that is beyond the ken of the average juror;

2. the field testified to must be at a state of the art that an expert's testimony could be sufficiently reliable; and

3. the witness must have sufficient expertise to offer the intended testimony.

[State v. Townsend, 186 N.J. 473, 491 (2006) (quoting State v. Torres, 183 N.J. 554, 567-68 (2005)).]

Additionally, "an expert's opinion must be based on a proper factual foundation," meaning "[e]xpert testimony should not be received if it appears the witness is not in possession of such facts as will enable him [or her] to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture." Endre v. Arnold, 300 N.J. Super. 136, 139 (App. Div. 1997) (alteration in original) (quoting Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 322-23 (App. Div. 1996)).

"The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Townsend v. Pierre, 221 N.J. 36, 53-54 (2015) (alteration in original) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)). Therefore,

an expert must "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 149 (2013)). The net opinion rule directs "that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). In short, the net opinion rule is "a prohibition against speculative testimony." Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).

An expert's opinion must be based on "facts or data in the particular case . . . perceived by or made known to the expert at or before the hearing." N.J.R.E. 703. See also Hisenaj v. Kuehner, 194 N.J. 6, 24 (2008) (holding an expert's opinion must be founded on "facts or data"). In this regard, an expert's opinion cannot present merely a bare conclusion unsupported by factual evidence.

"The burden of proving that the testimony satisfies those threshold requirements rests with the party proffering the testimony." Id. at 15. In reviewing the admissibility of a proposed expert's opinion, the "court must ensure that the proffered expert does not offer a mere net opinion." Pomerantz Paper, 207 N.J. at 372.

11

"[E]xperts generally[] must be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are scientifically reliable." Landrigan, 127 N.J. at 417. Thus,

> expert opinion [must] be grounded in facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.
>
> [Townsend, 221 N.J. at 53 (citation omitted).]

The net opinion rule can be considered a "restatement of the established rule that an expert's bare conclusions, unsupported by factual evidence, [are] inadmissible." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981).

### III

Plaintiff argues that because Dr. Okin was qualified only as an expert in orthopedic surgery, and not as an accident reconstruction expert or biomedical engineer, he was not competent to testify that the degree of trauma plaintiff sustained in the accident could not have caused him to sustain a fractured coccyx. Plaintiff further argues that even if Dr. Okin were qualified to offer an opinion on the degree of trauma plaintiff sustained, the record lacks the

evidential foundation for him to provide a competent opinion on this issue. We agree with plaintiffs on both points.

Dr. Okin is not a biomechanical expert qualified to comment on physical forces. The record contains no evidence that Dr. Okin has any background, training, or experience in biomechanics or accident reconstruction, nor did defendant offer him as expert in these fields. Moreover, the record lacks any credible information regarding relevant details of the accident, including information regarding the damage to each vehicle, the size of each vehicle, the speed of each vehicle, as well as information regarding the interior of plaintiff's vehicle.

The judge should have ruled that those portions of Dr. Okin's testimony where he addressed – in his words – "mechanism of injury," constituted net opinions and ordered their redaction. The record lacks any substantial credible evidence to support Dr. Okin's testimony regarding mechanism of injury. The heart of the dispute here was not whether plaintiff sustained a serious injury, but rather what caused it. In that context, it was impermissible for the court to allow Dr. Okin to testify regarding mechanism of injury, since he lacked both the qualifications and the relevant facts to offer anything but a net opinion to the jury.

The jury likely accepted Dr. Okin's conclusions regarding mechanism of injury because they came from a medical expert. We therefore conclude the failure

13

of the trial court to exclude these improper net opinions unfairly prejudiced plaintiffs and was "clearly capable of producing an unjust result." <u>R.</u> 2:10-2. Because of the real prospect that Dr. Okin's net opinion testimony impacted the jury's determination of the critical issue in the case, a new trial is required. We therefore reverse the no cause judgment and remand for a new trial.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION