**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0919-24

LOUISE LEVENSON,

    Plaintiff-Appellant,

v.

ELIJAH ONE, LLC,

    Defendant-Respondent,

and

JOSEPH ANTUNES,[1]

    Defendant.

_____

          Submitted December 10, 2025 – Decided December 30, 2025

          Before Judges Mayer and Jacobs.

          On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2539-22.

---

[1] The complaint caption incorrectly identified defendant as Joseph Atunes. Defendant's actual last name is Antunes.

Gold, Albanese & Barletti, LLC, attorneys for appellant (James N. Barletti, of counsel and on the briefs; Paul E. Kiel, on the briefs).

Riker Danzig LLP, attorneys for respondent (Jeffrey M. Beyer and Casey A. Boyle, of counsel and on the brief).

PER CURIAM

Plaintiff Louise Levenson appeals from an October 25, 2024 order granting summary judgment in favor of defendant Elijah One, LLC (Elijah One) and dismissing her complaint with prejudice.[2] We affirm.

Elijah One owns a home which it leased as a residential property. Joseph Antunes served as the property's manager. From 2012 to 2022, plaintiff rented and occupied the home pursuant to written lease agreement.

Plaintiff claimed she reported a gap in the kitchen flooring to Antunes in or around 2019. Notwithstanding her awareness of the problem with the kitchen floor, plaintiff invited guests and family members to her home. Plaintiff warned her invitees to be careful of the flooring. She further claimed she informed Antunes about the flooring problem several times. She explained Antunes promised to fix the situation but failed to do so. According to plaintiff, the conversations concerning the flooring occurred either in person or over the

---

[2] Plaintiff's claims against Antunes were dismissed with prejudice in an April 2024 voluntary stipulation of dismissal.

A-0919-24

telephone. Plaintiff never provided written notice regarding the floor to Antunes or Elijah One.

On or about January 11, 2021, three years after she became aware of the floor's condition, plaintiff fell due to the gap in the flooring. Plaintiff suffered an injury to her right hand and wrist and a radial fracture in her right forearm.

The parties' written lease agreement addressed repairs to the property. Under section sixteen of the lease agreement, "[t]he [l]andlord shall make any necessary repairs and replacements to the vital facilities serving the [p]roperty, such as the heating, plumbing and electrical systems, within a reasonable time after notice by the [t]enant." Section fifteen (h) of the lease agreement required the tenant to "[p]romptly notify the [l]andlord of any conditions which require[d] repairs to be done." Under section twenty-four of the lease agreement, notices required under the lease agreement "must be in writing in order to be effective."

At his deposition, Antunes testified he repaired or replaced plaintiff's appliances, toilet, and garage door over the years. According to Antunes, plaintiff would text him to request repairs in the home. Antunes did not recall any conversations with plaintiff regarding her kitchen floor.

A-0919-24

Plaintiff filed a personal injury action against Elijah One and Antunes. After the parties exchanged discovery, Elijah One, as the only remaining defendant, moved for summary judgment. After hearing the parties' arguments and reviewing the written submissions, the judge granted summary judgment in favor of Elijah One and dismissed plaintiff's complaint with prejudice.

In an oral decision, the motion judge found plaintiff knew about the "gapping in the floor . . . for quite a [] while." The judge concluded plaintiff's deposition testimony "conceded that this was a patently obvious condition," and that she "first noticed the condition that caused her fall at least three years before the fall." Further, giving plaintiff every reasonable inference in opposition to the motion, the judge accepted her testimony that Antunes agreed to make repairs to the flooring and failed to do so.

As plaintiff conceded the kitchen floor was "a patently obvious condition," the judge concluded notice to Elijah One was "not an issue." Under New Jersey law, the judge explained a landlord is only responsible for injuries attributable to "fraudulent concealment of a latent defect." Because plaintiff was aware of the floor's condition for several years, the landlord was not responsible for her injuries.

A-0919-24

The judge determined Elijah One bore responsibility to make repairs limited to "vital facilities" under the lease agreement. The judge noted Antunes's previous repairs to the home involved vital facilities, including appliances and a toilet. The judge concluded a gap in the kitchen flooring was not a vital facility analogous to those expressly identified in the lease agreement, such as heating, plumbing, and electrical systems. He noted there was "nothing before th[e c]ourt to suggest that a gap in the floor board would be a vital facility." Further, the judge found plaintiff admitted she failed to provide written notice of the flooring issue as required under the lease agreement.

On appeal, plaintiff argues there were genuine issues of material fact precluding the entry of summary judgment. Additionally, she asserts the judge erred in finding a gap in the flooring did not constitute a vital facility under the lease agreement. We reject these arguments.

Rule 4:46-2(c) provides summary judgment should be granted if the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." A genuine issue of material fact exists when "the competent evidential materials presented, when viewed in the light most

5

favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995). Issues "of an insubstantial nature" do not create a genuine issue of material fact. Id. at 530 (quoting Judson v. People's Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954)). We review "an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

The motion judge accorded plaintiff every reasonable inference in opposition to the motion for summary judgment. The judge accepted plaintiff's claim that she gave oral notice of the floor's condition to Antunes. The judge further accepted plaintiff's contention that Antunes agreed to repair the floor but did not do so. However, because plaintiff conceded awareness of the floor's condition at least three years prior to her fall, the judge properly applied well-settled New Jersey law that a landlord's liability is limited to "fraudulent concealment of a latent defect." Patton v. Texas Co., 13 N.J. Super. 42, 47 (App. Div. 1951) (citing LaFreda v. Woodward, 125 N.J.L. 489, 493 (E. & A. 1940)).

Plaintiff's reliance on Dawson v. Bunker Hill Plaza Associates, 289 N.J. Super. 309 (App. Div. 1996), is misplaced. In Dawson, the defendants provided an estimate for the work associated with a construction bracing plan but did not

A-0919-24

perform the bracing work.  Id. at 315-16.  We held "the duty to foresee and prevent a particular risk of harm from materializing should be commensurate with the degree of responsibility which the party has agreed to undertake."  Id. at 327.  Because the general contractor in Dawson, and not the defendants, was responsible for constructing the bracing, we affirmed summary judgment in favor of the defendants.  Id. at 327-28.

Like the defendants in Dawson, Elijah One did not undertake any repairs to the kitchen floor.  If Elijah One had done so, it would have been responsible to ensure the work repaired the defect.  In the absence of any repairs to the kitchen floor, the judge properly granted summary judgment to Elijah One.

We next address plaintiff's argument the judge erred in finding a gap in the kitchen floor did not constitute a vital facility under the lease agreement. Section sixteen of the lease agreement expressly states:  "[t]he [l]andlord shall make any necessary repairs and replacements to the vital facilities serving the [p]roperty, such as the heating, plumbing and electrical systems, within a reasonable time after notice by the [t]enant."  The lease agreement also required notices "be in writing in order to be effective."

We review the legal interpretation of a contract provision de novo.  JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 159-60 (App. Div.

A-0919-24

2022). We must "determine 'the reasonably certain meaning of the language used, taken as an entirety, considering the situation of the parties, the attendant circumstances, the operative usages and practices, and the objects the parties were striving to achieve.'" ACE Am. Ins. Co. v. Am. Med. Plumbing, Inc., 458 N.J. Super. 535, 539 (quoting George M. Brewster & Son, Inc. v. Catalytic Constr. Co., 17 N.J. 20, 32 (1954)).

Under the doctrine of ejusdem generis, when general words follow specific words, the general words are construed to include only the objects similar in nature to those objects identified by the specific words. See Isetts v. Borough of Roseland, 364 N.J. Super. 247, 257-58 (App. Div. 2003). The lease agreement states the general terms, "vital facilities serving the [p]roperty," followed by the specific examples of "heating, plumbing and electrical systems," which are essential services for living in a leased property. Applying the doctrine of ejusdem generis, the term "vital facilities" refers to utilities impacting plaintiff's ability to reside in the leased property, which does not indicate a gap in the flooring.

Additionally, the lease agreement requires plaintiff to provide written notice to Elijah One requesting repairs. Plaintiff admitted she never provided written notice of any problem with the kitchen flooring. Thus, even assuming a

gap in the kitchen flooring could constitute a "vital facility," an argument which we reject, plaintiff's cause of action fails because she never gave written notice of the condition as required under the lease agreement.

Further, we reject plaintiff's reliance on the model jury charge governing a landlord's duty. Under Model Jury Charges (Civil), 5.20C(B), "Duty of Owner to Tenant Leasing Entire Premises and to Others on Premises" (approved May 1977), a landlord "has the duty to repair damages to vital facilities caused by ordinary wear and tear during the terms of the tenancy." According to plaintiff, the language in the model jury charges supports her claim that Elijah One had a duty to fix the kitchen floor.

Under Marini v. Ireland, 56 N.J. 130, 146 (1970), if the landlord breaches the implied covenant of habitability, the tenant has the right "upon a constructive eviction, to vacate the premises and end his [or her] obligation to pay rent" or, after reasonable efforts to notify the landlord of the faulty condition, to "proceed to repair or replace" and "deduct the cost thereof from future rents." "A breach of the [implied] covenant [of habitability] may also expose the landlord to liability for personal injuries caused by the breach." Dowler v. Boczkowski, 148 N.J. 512, 521 (1997).

A-0919-24

"Not every defect or inconvenience will be deemed to constitute a breach of the covenant of habitability. Berzito v. Gambino, 63 N.J. 460, 469 (1973). The condition complained of must be such as truly to render the premises uninhabitable in the eyes of a reasonable person." Ibid. The types of conditions affecting habitability include "sewage problem[s], drainage problems, exposed wires and rotted wood in the foundation." C.F. Seabrook Co. v. Beck, 174 N.J. Super. 577, 595 (App. Div. 1980). Consistent with New Jersey case law, vital facilities covered by the implied covenant of habitability include heating, lighting, plumbing, sanitation, and security. See Trentacost v. Brussel, 82 N.J. 214, 225 (1980).

The gap in the kitchen flooring did not impact plaintiff's ability to occupy the leased home. In fact, plaintiff continued to reside in the home for many years after discovering, and allegedly reporting, the condition of the kitchen floor. Plaintiff also warned her guests and family members over the course of several years to be careful of the kitchen flooring. Further, plaintiff never invoked the implied covenant of habitability by withholding the rent or arguing constructive eviction based on Elijah One's failure to repair the floor.

10

To the extent we have not addressed any of plaintiff's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0919-24