218 N.J. Super. 434 (1986)
527 A.2d 967
JOAN SCHRANTZ, EXECUTRIX OF THE ESTATE OF JOSEPH SCHRANTZ, DECEASED AND JOAN L. SCHRANTZ, INDIVIDUALLY, PLAINTIFFS,
v.
AUGUST C. LUANCING, M.D., VICTOR DY, M.D., SURYAKANT PATEL, M.D., G. TOM MOREA, M.D., ARTHUR H. POPKAVE, M.D., AND WARREN HOSPITAL, A NEW JERSEY CORPORATION, ALL JOINTLY OR SEVERALLY, DEFENDANTS.
Superior Court of New Jersey, Law Division Warren County.
Decided October 21, 1986.
*435 D. Scott Curzi, for plaintiff Joan L. Schrantz.
Robert W. Winters, Jr. for defendant Luancing (Francis & Berry, attorneys).
Beth A. Wright, for defendant Dy (Stanley P. Stahl, attorney).
Stephen J. Tafaro, for defendant Patel (McDonough, Murray & Korn, attorneys).
*436 Roger G. Ellis, for defendant Morea (Bumgardner, Hardin & Ellis, attorneys).
James A. Vasios, for defendant Popkave (Hurley & Vasios, attorneys).
Bradley M. Wilson, for defendant Warren Hospital (Feuerstein, Sachs, Maitlin, Rosenstein & Fleming, attorneys).
ARNOLD, J.S.C.
In this medical malpractice action, this court struck the testimony of one of plaintiff's medical experts on the grounds that the expert did not understand the meaning of the phrase "reasonable medical certainty." This opinion is intended to supplement the court's earlier oral decision.
On September 11, 1983, Joseph Schrantz was injured in a motorcycle accident. He was admitted to Warren Hospital suffering from three broken ribs. For several days his condition improved but on September 17, 1983 he suffered a reversal and died on September 20, 1983. The cause of death was pulmonary embolism. The defendants are five physicians, each of whom is charged with negligence in the diagnosis and treatment of Joseph Schrantz, and Warren Hospital, which is alleged to have been negligent on the grounds that a lung scan could not be performed at the hospital on weekends during September 1983.
The plaintiff offered Dr. Samuel Baer as a medical expert. In addition to being licensed to practice medicine, Dr. Baer is also board certified in internal medicine. There were no objections to his qualifications and he was permitted to testify. During his direct examination Dr. Baer was questioned in turn about each defendant. He was asked the following question without objection about four of the five defendant doctors: "Doctor, do you have an opinion based upon reasonable medical certainty whether Dr. ____ was negligent?" After Dr. Baer responded affirmatively he was asked to state that opinion and he answered that each of the four was negligent. Plaintiff's *437 counsel then asked him the following question about the fifth doctor, Dr. Popkave: "Can you state with a reasonable degree of medical certainty whether Dr. Popkave deviated from the accepted medical standards of professional care?" Counsel for Dr. Popkave objected and at sidebar sought to question Dr. Baer outside the presence of the jury as to whether Dr. Baer understood the meaning of the phrase "reasonable medical certainty." Defense counsel argued that "[u]nless he can explain that to the satisfaction of the court ... his testimony is incompetent, as an expert." This court overruled the objection, and informed counsel that Dr. Baer could be cross-examined as to whether he knows the meaning of the phrase "reasonable medical certainty." This ruling was based on the fact that Dr. Baer had been qualified as a medical expert and the court's understanding that no additional foundation testimony was necessary for him to answer the question. Dr. Baer then answered the question and then stated his opinion that Dr. Popkave was negligent. Plaintiff's counsel made no attempt to demonstrate that Dr. Baer understood the meaning of the phrase "reasonable medical certainty."
The first defense counsel to cross-examine Dr. Baer immediately pursued the subject of whether Dr. Baer understood the meaning of the phrase. The following colloquy took place:
Q. Doctor, define for me reasonable medical probability.
A. Well, we have certain standards in medical care. If medical care doesn't come up to those standards, you say that the care has been inadequate, or whatnot. Deficient, negligent.
Q. Could you please define for me reasonable medical probability?
A. If a certain situation is existing in the care of a patient, you must assume that this is the standard under reasonable medical care. If the medical care is not up to that, then you say it is under reasonable probability.
Q. I still don't understand your definition. Could you clarify it for me, Doctor?
A. Well, I don't know what you don't understand.
Q. What do you mean by the term reasonable medical probability?
A. It is what we assume comes up to the standards of medical care. If it is not in that degree, then it is deficient, negligent, or unsatisfactory.
Q. Okay. Doctor, could you define for me accepted standards of medical practice?

*438 A. Well, we have certain standards. If you have a patient with an acute appendix, you do not assume that you're going to neglect it. The reasonable standard of medical care is that you operate on that patient. This is what we accept as the standard today for treatment of that condition.
Q. Okay, are accepted standards of medical practice the same thing as reasonable medical probability?
Plaintiff's counsel: Objection, your Honor.
The Court: Overruled.
Q. Could you answer the question? Are accepted standards of medical practice the same thing as reasonable medical probability?
A. I would say so, yes.
There was no other cross-examination on this subject nor any redirect examination concerning Dr. Baer's understanding of the phrase "reasonable medical probability."
Plaintiff, in opposing the motion to strike, presented a three-part argument. First, plaintiff argued that because Dr. Baer was found qualified to testify as a medical expert his testimony may not be struck. This argument is rejected because a witness though qualified as a medical expert may not introduce incompetent evidence such as an opinion not based on reasonable medical probability or certainty. See Gribbin v. Fox, 130 N.J.L. 357, 359 (Sup.Ct. 1943) aff'd, 131 N.J.L. 187 (E & A 1944) (Supreme Court held that it was error not to strike testimony of medical expert which was based on mere possibility); Bertram v. Wunning, 385 S.W.2d 803 (Mo. Ct. App. 1965), aff'd. after remand 417 S.W.2d 120 (Mo. Ct. App. 1967). The purpose of a motion to strike is to purge such incompetent evidence. Priest v. Poleshuck, 15 N.J. 557, 564 (1954). A finding that a witness is qualified as an expert means only that the witness' education and experience qualify him to offer an expert opinion if that opinion is based on reasonable medical certainty or probability.
Second, plaintiff argued that the failure to conduct an Evid.R. 8 hearing outside the presence of the jury after counsel for Dr. Popkave raised the issue left plaintiff's counsel with the understanding that Dr. Baer's testimony was immunized from a motion to strike so that whatever the testimony elicited on cross-examination it would only effect Dr. Baer's credibility. *439 This argument must also be rejected because counsel for Dr. Popkave and other defense counsel specifically stated they were challenging the competency of the evidence and this court stated that they could cross-examine on this issue. Because Dr. Baer had already testified at length and had already opined that four of the doctors were negligent based on reasonable medical probability, there was little point in holding an Evid.R. 8 hearing at that time. However, those circumstances did not insulate Dr. Baer's testimony from a motion to strike, since such a motion may be made after cross-examination has been completed.
Third, plaintiff argued that the motion to strike should not be granted because Dr. Baer's understanding or lack of understanding of the phrase "reasonable medical probability" bears only on the doctor's credibility as a witness. This argument also fails as medical opinion testimony must be couched in terms of reasonable medical certainty or probability. Germann v. Matriss, 55 N.J. 193 (1970); Johnesee v. Stop 'n Shop Cos., Inc., 174 N.J. Super. 426 (App.Div. 1980). Reasonable medical probability or certainty refers to the general consensus of recognized medical thought and opinion concerning the probabilities of conditions in the future based on present conditions. Boose v. Digate, 107 Ill. App.2d 418, 246 N.E.2d 50 (1969). If the cross-examination of Dr. Baer established that he did not understand the meaning of the phrase reasonable medical probability or certainty then his testimony must be stricken because it cannot be said that the opinions he gave were based on reasonable medical probability.
A reading of the above recited cross-examination demonstrates beyond any doubt that Dr. Baer did not know the meaning of the phrase "reasonable medical probability." In response to the last question on cross-examination he incorrectly equates the meaning of "accepted standards of medical practice" to "reasonable medical probability." This is not a case where a medical expert's testimony creates mere problems of semantics, e.g., Pucci v. Rausch, 51 Wis.2d 513, 187 N.W.2d *440 138 (1971), or affects the weight to be given to his testimony. E.g., Boose v. Digate, 107 Ill. App.2d 418, 246 N.E.2d 50 (1969) (where doctor testified that there was a 50 percent chance that eye would have to be removed); Bertram v. Wunning, 417 S.W.2d 120 (Mo. Ct. App. 1967) (trial court improperly excluded doctor's testimony where doctor testified on voir dire that within reasonable medical certainty hernia was caused by accident and that a 90 percent chance that hernia was caused by accident was "reasonable medical certainty.") Nor is this a case where the court can say that although the doctor was unfamiliar with legal phraseology he gave his opinion based on reasonable medical certainty. E.g., Redmon v. Sooter, 1 Ill. App.3d 406, 274 N.E.2d 200 (1971). Rather, it is a case where the defense successfully demonstrated that the plaintiff failed to establish that Dr. Baer's testimony was based on reasonable medical certainty.
Accordingly, Dr. Baer's testimony was struck and the jury was instructed to disregard it.