240 N.J. Super. 289 (1990)
573 A.2d 196
MARY ANN VUOCOLO, AS ADMINISTRATRIX AD PROSEQUENDUM FOR THE ESTATE OF LUCY VUOCOLO, PLAINTIFF-APPELLANT,
v.
DIAMOND SHAMROCK CHEMICALS COMPANY, DEFENDANT-RESPONDENT, AND CHEMICALAND CORP., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued September 26, 1989.
Decided April 20, 1990.
*290 Before Judges MICHELS, DEIGHAN and BROCHIN.
Fredric J. Gross argued the cause for appellant Mary Ann Vuocolo.
George W.C. McCarter argued the cause for respondent Diamond Shamrock Chemicals Company (McCarter and English, attorneys; George W.C. McCarter, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Mary Ann Vuocolo, as Administratrix ad prosequendum for the estate of Lucy Vuocolo, appeals from a summary judgment of the Law Division entered in favor of defendant Diamond Shamrock Chemicals Company in this personal injury toxic tort case brought pursuant to N.J.S.A. 2A:15-3. Plaintiff, on behalf of the estate of her mother, Lucy Vuocolo (decedent), *291 sought to recover damages for pain and suffering which occurred during her mother's lifetime as a result of contracting pancreatic cancer. She alleged that dioxin, a toxic substance which defendant released into the environment, substantially increased decedent's risk of contracting cancer. The trial court, on cross-motions for summary judgment, held that plaintiff had failed to establish her claim and dismissed the action.

I.
In 1955, defendant's predecessor, Diamond Alkali, put into operation a chemical plant at 80 Lister Avenue in the Ironbound section of Newark. In 1960, an explosion at the Lister Avenue plant released a large amount of dioxin, a dangerous by-product of the chemical process, into the environment. An additional amount of dioxin was dispersed some time later when the building was destroyed and removed from the site. Although the explosion occurred in 1960, it was not until 1983 that the explosion and the dioxin release became public knowledge. Thereafter, the New Jersey Department of Environmental Protection (DEP) conducted tests in the area surrounding the Lister Avenue plant. On September 16, 1985, the DEP took soil samples from decedent's property and tested them for dioxin. By letter dated November 22, 1985, the DEP informed plaintiff that only harmless trace amounts of dioxin were discovered in the samples and that remedial action was not necessary. The DEP also determined that there were no harmful concentrations of dioxin in the other homes it sampled. Nonetheless, it conducted a street sweeping operation to rid the area of any contaminated dirt and dust.
In 1971, more than 10 years after the explosion, decedent moved into a home at 60 Joseph Street, which is located less than two blocks from defendant's Lister Avenue plant. Decedent was active in the neighborhood and was frequently outside working or walking. Sometime after moving to Joseph Street, *292 decedent was diagnosed as having pancreatic cancer from which she died on January 23, 1981.
In 1985, plaintiff instituted this action on behalf of her mother's estate against defendant. Although plaintiff was unable to quantify decedent's ingestion of dioxin or even establish that she in fact ingested any amount of dioxin or was even exposed to dioxin, plaintiff claimed, based on principles discussed in Evers v. Dollinger, 95 N.J. 399, 471 A.2d 405 (1984) and Hake v. Manchester Township, 98 N.J. 302, 486 A.2d 836 (1985), that it was unnecessary to show causation in the traditional sense as long as she could establish that defendant put decedent at risk and decedent was ultimately injured. In support of plaintiff's claim, Dr. Deborah Barsotti, a pathologist, submitted a report in which she concluded:
[I]t is my opinion that Mrs. Vuocolo was exposed to TCDD in sufficient quantities to develop clinical toxicity as demonstrated by chloracne. Furthermore, Diamond Alkali's accident that released TCDD into the surrounding area is responsible for the preponderance of TCDD to which Mrs. Vuocolo was exposed. Subsequently, Mrs. Vuocolo died of adenocarcinoma of the pancreas. Due to the rare nature of the cancer and the male preponderance, it is my opinion that Mrs. Vuocolo's exposure to TCDD substantially increased her risk of developing adenocarcinoma and may have caused or promoted this disease.
Defendant conceded that it released dioxin into the atmosphere and that decedent died from pancreatic cancer. However, defendant denied responsibility for decedent's death and maintained that plaintiff was not entitled to recovery as she did not establish a causal link between decedent's cancer and the dioxin release. Judge Thompson in the Law Division denied cross-motions for summary judgment to enable plaintiff to complete discovery, but indicated that he would grant summary judgment if the proofs remained the same. The judge, in part, reasoned:
It is fundamental that a plaintiff's burden of proof includes a showing that she has suffered an injury proximately caused by defendants' acts or omissions. Germann v. Matris [Matriss], 55 N.J. 193, 205 [260 A.2d 825] (1970). Similarly, plaintiff must present proof to a reasonable degree of medical probability that she has suffered an injury proximately caused by defendant. Johnesee v. Stop and Shop Co., 174 N.J. Super. 426, 431 [416 A.2d 956] (App.Div. 1980).

*293 In response to defendants' motion, plaintiff contends that her answer to interrogatories and the unsigned report of Dr. Deborah Barsotti, Ph.D. establish solid factual foundations for each element plaintiff must prove and therefore defeat defendants' claim for summary judgment. Dr. Barsotti concludes that Mrs. Vuocolo exposure to dioxin "substantially increased her risk of developing adenocarcinoma and may have caused or promoted this disease."
It is well established that when a moving party demonstrates a right to summary judgment, the opponent of the motion must show by competent evidential material that a genuine issue of material fact exists. James Talcott Inc. v. Shulman, 82 N.J. Super. 438, 443 [198 A.2d 98] (App.Div. 1964). Dr. Barsotti's report falls short of that which is necessary to satisfy a plaintiff's burden of proof in this type of litigation.
The burden of proof rests upon a plaintiff to prove causal relationship by a preponderance of the evidence. Proof of "possibility" is not enough. Such proof must be "probability." Evers v. Dollinger, 95 N.J. 399 [471 A.2d 405] (1984) and Hake v. Manchester Township, 98 N.J. 302 [486 A.2d 836] (1985) have not reversed the basics of the law. However, unless plaintiff has completed discovery, summary judgment can not be granted. See Salomon v. Eli Lilly & Co., 98 N.J. 58 [484 A.2d 320] (1984). If discovery is completed at a future date and the proofs remain in this posture, then at that time it would be appropriate to grant the motion.
After discovery was completed, defendant and plaintiff renewed their motions for summary judgment. Since plaintiff failed to proffer any additional evidence as to a causal relationship between the release of the dioxin and decedent's death from cancer in 1981, the trial court granted defendant's motion for summary judgment and dismissed this action with prejudice. This appeal followed.
Plaintiff contends that the trial court erred in granting summary judgment in favor of defendant and in denying her cross-motion for summary judgment. She seeks a reversal of the judgment in favor of defendant, the entry of judgment in her favor and a remand of the matter to the trial court for a determination of damages. According to plaintiff, legal causation is established where a defendant "substantially increases" the risk of disease or death and the disease or death becomes a reality. We disagree and affirm the summary judgment in favor of defendant.

*294 II.
It is fundamental that in order to visit tort liability upon a defendant a "plaintiff must prove tortious conduct, injury and proximate cause." Ayers v. Jackson Township, 106 N.J. 557, 585, 525 A.2d 287 (1987); see Prosser and Keeton on the Law of Torts § 30 at 164-165 (5th ed. 1984). "Proximate cause" has been defined as "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Fernandez v. Baruch, 96 N.J. Super. 125, 140, 232 A.2d 661 (App.Div. 1967), rev'd on other grounds, 52 N.J. 127, 244 A.2d 109 (1968) (Emphasis supplied). Thus, a plaintiff must show that a defendant's conduct constituted a cause in fact of a decedent's disease and subsequent death because an act or omission is not regarded as a cause of an event if the event would have occurred without such act or omission. Kulas v. Pub. Serv. Elec. & Gas Co., 41 N.J. 311, 317, 196 A.2d 769 (1964); Battista v. Olson, 213 N.J. Super. 137, 148-149, 516 A.2d 1117 (App.Div. 1986); Henderson v. Morristown Memorial Hosp., 198 N.J. Super. 418, 428-429, 487 A.2d 742 (App.Div.), certif. den., 101 N.J. 250, 501 A.2d 922 (1985). See also Prosser & Keeton on the Law of Torts, supra, § 41 at 265. This rule has been tempered by decisions holding that, even if damage would have occurred in the absence of a defendant's negligence, liability may be imposed upon a showing that the negligent conduct was a substantial factor in causing the harm alleged. State v. Jersey Cent. Power & Light Co., 69 N.J. 102, 110, 351 A.2d 337 (1976); Henderson v. Morristown Memorial Hosp., supra, 198 N.J. Super. at 429, 487 A.2d 742. This "substantial factor" exception to the general rule of proximate causation rests largely on the acceptance of the following tort principles:
[An] actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm.... [Restatement, Torts 2d, § 431 at 428 (1965)].
* * * * * * * *

*295 (1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.
(2) If two forces are actively operating one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about. [Restatement, Torts 2d, supra, § 432 at 430 (Emphasis supplied)].
These principles have been utilized broadly to justify a relaxation of a plaintiff's burden of proof in certain situations. Thus, in medical malpractice cases, because of complicated proof problems, our courts have adopted the "lost chance" doctrine or applied the "substantial factor" exception to reduce a plaintiff's burden of proof as to causation. For example, in Evers v. Dollinger, supra, plaintiff sued her physician alleging that the delay in treatment caused by his failure to diagnose properly her breast cancer enhanced the risk that the cancer would recur. Because plaintiff's cancer did recur during the proceedings, the Supreme Court did not consider or decide whether "the unquantified (and unquantifiable) but nevertheless certain increase in the risk, standing alone, is sufficient injury to sustain plaintiff's cause of action." Evers v. Dollinger, supra, 95 N.J. at 406, 471 A.2d 405. However, relying largely upon Pennsylvania law, the Court held "that when there is evidence that a defendant's negligent act or omission increase[s] the risk of harm ... and ... the harm [is] sustained, `it becomes a question for the jury as to whether or not that increased risk was a substantial factor in producing the harm.'" Id. at 414-415, 471 A.2d 405 (citing Hamil v. Bashline, 481 Pa. 256, 269, 392 A.2d 1280, 1286 (1978)). Agreeing with Hamil, the Court distinguished "the more routine tort case, in which the law requires proof that the result complained of probably would not have occurred `but for' the negligent conduct of the defendant," id. 95 N.J. at 415, 471 A.2d 405, from the medical malpractice case at issue by noting that in the latter, the physician is "charged with having failed in a duty to protect against harm from another source...." Id. Accordingly, *296 the Court held that the physician could be held liable if it were established
within a reasonable degree of medical probability, that the seven months delay resulting from defendant's failure to have made an accurate diagnosis and to have rendered proper treatment increased the risk of recurrence or of distant spread of plaintiff's cancer, and that such increased risk was a substantial factor in producing the condition from which plaintiff currently suffers. [Id. at 417, 471 A.2d 405].
In Hake v. Manchester Township, supra, which was decided a year after Evers, the Supreme Court removed the lost chance doctrine from the exclusive realm of medical malpractice cases and applied it to a wrongful death action. There, plaintiffs sued Manchester Township and several of its police officers claiming that the defendants' failure to render prompt emergency care to their son, when the police discovered him unconscious in his jail cell, deprived him of a chance to be revived. Although holding that plaintiffs had a viable claim, the Court limited the applicability of the doctrine to cases where there exists a duty to save a life and there is a substantial possibility of rescue and stressed that the doctrine applies only to a "narrow class of cases of lost chance of survival...." Hake v. Manchester Township, supra, 98 N.J. at 311, 486 A.2d 836. Thus, the Court held "that in establishing causation it suffices for plaintiffs to show that defendants' negligent conduct negated a substantial possibility that prompt rescue efforts would have been successful, thereby constituting a substantial factor in causing decedent's death." Id. at 306, 486 A.2d 836.
In Ayers v. Jackson Township, supra, which concerned a toxic tort suit under the Tort Claims Act, the Supreme Court "decline[d] to recognize [a] cause of action for the unquantified enhanced risk of disease...." Ayers v. Jackson Township, supra, 106 N.J. at 598, 525 A.2d 287. (Emphasis in original). Although the Court recognized the extreme difficulties facing toxic tort plaintiffs, it did not "decide whether a claim based on enhanced risk of disease that is supported by testimony demonstrating that the onset of the disease is reasonably probable could be maintained under the Tort Claims Act." *297 Id. at 599, 525 A.2d 287. (Citation omitted). The Court demonstrated its reluctancy to increase the applicability of this doctrine by noting "that the recognition of an `enhanced risk' cause of action, particularly when the risk is unquantified, would generate substantial litigation that would be difficult to manage and resolve." Id. at 597, 525 A.2d 287.
The Supreme Court recently revisited these issues in Mauro v. Raymark Indus., Inc., 116 N.J. 126, 561 A.2d 257 (1989). There, plaintiff, a state employee, was exposed to materials containing asbestos during the course of his employment. In 1981, he was examined by a state-employed physician. Although the results of the tests performed were "normal," the report stated: "[Y]our exposure to asbestos has been significant and there is some evidence that this exposure may increase the risk of development of lung cancer." Mauro v. Raymark Indus., Inc., supra, 116 N.J. at 129, 561 A.2d 257. Plaintiff instituted suit against several manufacturers of asbestos products based on injuries allegedly sustained as a result of his exposure to asbestos. At trial, "plaintiff's expert testified that there was a `high probability' that plaintiff had an increased risk of contracting cancer during his lifetime. The expert was unable to testify that it was probable that plaintiff would contract cancer...." Id. at 128, 561 A.2d 257. (Emphasis in original). As a result, the trial court refused to allow plaintiff's claim for enhanced risk of developing cancer to go to the jury. We affirmed the judgment. Mauro v. Owens-Corning Fiberglass Corp., 225 N.J. Super. 196, 542 A.2d 16 (App.Div. 1988). We refused to recognize plaintiff's claim for enhanced risk of cancer because plaintiff's expert "was unable to quantify plaintiff's enhanced risk of cancer and to predict, within a degree of reasonable probability that plaintiff will develop cancer...." Mauro v. Owens-Corning Fiberglass Corp., supra, 225 N.J. Super. at 205, 542 A.2d 16.
Although the Mauro Court recognized the existence of claims based on enhanced risk of disease, it held specifically that damages are only recoverable in those cases where there is *298 evidence establishing the future occurrence of disease as a reasonable medical probability. As the Court explained, a claim for damages predicated upon enhanced risk of disease is
conceptually analogous to the claim of a personal-injury plaintiff with a damaged knee to recover damages for the prospective onset of an arthritic condition that may result from the knee injury. See Jackson v. Johns-Manville Sales Corp., 781 F.2d 394, 412 (5th Cir.) (describing General Motors Acceptance Corp. v. Layton, 353 So.2d 749 (Miss. 1977)  where plaintiff with bruised knee recovered damages for prospective arthritis  as "indistinguishable" from asbestos plaintiffs' claim for prospective cancer), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986). Under our case law, the personal-injury plaintiff conceivably could claim medical-surveillance damages and emotional-distress damages on the basis that the knee injury might cause arthritis, but could not recover damages for the prospective arthritic condition  the "enhanced risk" of arthritis  unless its occurrence was established as a matter of reasonable medical probability. Coll v. Sherry, supra, 29 N.J. [166] at 174-75 [148 A.2d 481 (1959)]. Thus, the fact that Mauro's claims for medical surveillance and emotional distress, attributable to his enhanced risk of cancer, were submitted to the jury does not exhaust his claim for damages based on the prospective occurrence of cancer  the "enhanced risk" of cancer. Accord Herber v. Johns-Manville Corp., supra, 785 F.2d [79] at 82 [(3rd Cir.1986)]. The question before us is whether that component of the claim should have been submitted to the jury in the absence of evidence establishing the future occurrence of cancer as a reasonable medical probability. We hold that the prospective-cancer component of plaintiff's enhanced-risk claim was properly withheld from the jury. [Mauro v. Raymark Indus., Inc., supra, 116 N.J. at 138-139, 561 A.2d 257].
Applying these principles here, we are satisfied that the trial court properly dismissed plaintiff's claim. First, this is not a lost chance case. Although defendant released dioxin into the environment and decedent died of pancreatic cancer, there is no proof of a neglected duty on the part of defendant to save decedent's life as was required by Evers, supra, and Hake, supra. Likewise, plaintiff's expert could not quantify decedent's enhanced risk of cancer nor state to a reasonable medical probability that the release of dioxin caused decedent's cancer and death. The fact that decedent actually contracted cancer and died of the disease is irrelevant. In order to hold a defendant liable under the principle of enhanced risk (regardless of whether the disease actually manifests itself) plaintiff must demonstrate to a reasonable medical probability that *299 defendant's activities substantially increased the risk of disease. Plaintiff has not done this notwithstanding the trial court's affording her ample opportunity to conduct further discovery and present the necessary proofs. Quite simply, the matter is more akin to a traditional personal injury tort case. Because plaintiff has not and apparently cannot establish a causal link between defendant's conduct and decedent's disease and ultimate death, she is not entitled to recover against defendant.

III.
Beyond the fact that plaintiff's expert, Dr. Barsotti, could not testify to a reasonable medical probability that defendant had substantially increased decedent's risk of contracting cancer, her report is a net opinion, which does not provide a proper medical foundation to support plaintiff's claim. Historically, courts have refused to admit expert medical testimony based on mere speculation or possibility, unsupported by the evidence. As one commentator has noted:
It seems universally agreed that an expert medical opinion as to the cause of death, disease, or other physical condition is inadmissible if it is solely an unsupported conclusion of the witness, since however well qualified the witness is, and however scientific or abstruse the subject matter is, an opinion must have reference to the material facts of the case as reflected by the evidence. [Annotation, "Opinion Evidence  Disease or Injury," 66 A.L.R.2d 1082, 1086 (1959)].
See Clearwater Corp. v. City of Lincoln, 202 Neb. 796, 277 N.W.2d 236, 241 (1979) (holding "[e]xpert testimony should not be received if it appears the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. The witness should not be allowed to express an opinion on an inadequate basis...."). Put in different terms:
Expert medical opinion evidence as to causation between an event and death, disease, or a physical condition is inadmissible if it would amount to the expression of a pure conclusion, without reference to factual causative antecedents incorporated in questioning or unsupported by evidence in the record, inasmuch as admission would amount to an invasion of the fact-finding function *300 of the jury. [Annotation, "Opinion Evidence  Disease or Injury," 66 A.L.R.2d, supra, at 1116-1117].
New Jersey has followed the majority rule and has declined to admit expert opinion without a proper factual foundation. In Gribbin v. Fox, 130 N.J.L. 357, 32 A.2d 853 (Sup.Ct. 1943) aff'd, 131 N.J.L. 187, 35 A.2d 719 (E. & A. 1944), the former New Jersey Supreme Court excluded the testimony of an expert witness who was unable to state definitely the cause of the plaintiff's blood deficiency. The court held that the "evidence was improperly admitted in that all that it did was to establish a possible cause for the condition and it failed to negative other possible causes." Gribbin v. Fox, supra, 130 N.J.L. at 359, 32 A.2d 853.
This prohibition against speculative expert opinion has been labeled by modern courts as the "net opinion rule." Under this doctrine, expert testimony is excluded if it is based merely on unfounded speculation and unquantified possibilities. In Johnesee v. Stop & Shop Cos., 174 N.J. Super. 426, 431, 416 A.2d 956 (App.Div. 1980), we held that "medical-opinion testimony must be couched in terms of reasonable medical certainty or probability; opinions as to possibility are inadmissible." Courts considering the issue since the Johnesee case have agreed that expert opinion, unsubstantiated by medical certainties or probability, is inadmissible. See State v. Freeman, 223 N.J. Super. 92, 116, 538 A.2d 371 (App.Div. 1988). See also State v. Smith, 210 N.J. Super. 43, 57, 509 A.2d 206 (App.Div.), certif. den., 105 N.J. 582, 523 A.2d 210 (1986); Schrantz v. Luancing, 218 N.J. Super. 434, 439, 527 A.2d 967 (Law Div. 1986).
Analyzed in this light, plaintiff's expert's opinion is nothing more than mere speculation and possibility. Dr. Barsotti's opinion is not even phrased in terms of reasonable medical certainty or probability and as such, is not admissible to substantiate plaintiff's claim or save plaintiff's case from summary judgment. Moreover, although Dr. Barsotti's report is lengthy, it is very generalized and focuses much more on the nature and history of dioxin rather than upon the 1960 explosion and its *301 effect on decedent. Dr. Barsotti only referred to decedent briefly in her report and much of this is merely a restatement of decedent's life history and medical records. Dr. Barsotti never examined decedent at any time. Moreover, she never conducted any dioxin tests in the Lister Street area or on the numerous other people who lived and worked in the area. The most that Dr. Barsotti was willing to state was that "Mrs. Vuocolo's exposure to TCDD substantially increased her risk of developing adenocarcinoma and may have caused or promoted this disease." Thus, Dr. Barsotti's opinion is speculative and not based on reasonable medical certainty or probability.
Affirmed.