**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5527-17T4

LOUIS A. MAGDON,

    Plaintiff-Appellant,

        v.

HARLEY-DAVIDSON USA,
HARLEY-DAVIDSON MOTOR
COMPANY, INC., and HANNUM'S
HARLEY-DAVIDSON,

    Defendants,

and

HARLEY-DAVIDSON MOTOR
COMPANY GROUP, LLC, and
LIBERTY HARLEY-DAVIDSON,

    Defendants-Respondents.

_____

        Argued May 1, 2019 – Decided May 30, 2019

        Before Judges Koblitz, Currier and Mayer.

        On appeal from Superior Court of New Jersey, Law
        Division, Middlesex County, Docket No. L-4363-16.

Paul F. O'Reilly argued the cause for appellant (Law Offices of James Vasquez, PC, and Paul F. O'Reilly, attorneys; Paul F. O'Reilly, on the brief).

Travis E. Romero-Boeck (Quarles & Brady, LLP) of the Wisconsin bar, admitted pro hac vice, argued the cause for respondent Harley-Davidson Motor Company Group, LLC (Eckert Seamans Cherin & Mellott, LLC, Mark Kircher (Quarles & Brady, LLP) of the Wisconsin bar, admitted pro hac vice, Eric Matzke (Quarles & Brady, LLP) of the Wisconsin bar, admitted pro hac vice, and Travis E. Romero-Boeck, attorneys; Christopher E. Torkelson, of counsel and on the brief).

Michael Keith Willison argued the cause for respondent Liberty Harley-Davidson (Dickie Mc Camey & Chilcote PC, attorneys; Michael Keith Willison, on the brief).

PER CURIAM

Plaintiff Louis Magdon appeals from the June 22, 2018 order granting defendants Harley-Davidson Motor Company Group, LLC, (Harley-Davidson) and Liberty Harley-Davidson (Liberty) summary judgment and dismissing plaintiff's complaint. The trial judge found plaintiff's expert report was an inadmissible net opinion, and, therefore, plaintiff was unable to support his products liability and negligence claims. Because we find the expert report was

supported by factual evidence and provided "whys and wherefores,"[1] it is not a net opinion. We reverse the trial judge's ruling, and vacate the summary judgment order.

Plaintiff purchased a new Harley-Davidson motorcycle in 2010 at Liberty, a Harley-Davidson dealership. Over the next several years, plaintiff serviced the motorcycle at Liberty, usually before going on a long trip. During those visits, plaintiff expected Liberty employees to "go over the whole bike," and fix any problems.

In 2012, Liberty performed maintenance on the motorcycle — changing the oil, installing a cable antenna, and servicing the gaskets and spark plugs. On August 16, 2014, Liberty again changed the oil and provided a new oil filter. Plaintiff also recalled getting new tires and rear brake pads from Liberty, but was unsure when those services were performed.

The Harley-Davidson owner's manual for this particular motorcycle instructs that the brake system should be flushed and the brake fluid should be changed every two years. Liberty did not perform any service or work on the brake system during the noted service visits. Prior to his accident in August

---

[1] Beadling v. William Bowman Assocs., 355 N.J. Super. 70, 87 (App. Div. 2002).

2014, plaintiff had not experienced any problems with the motorcycle's brakes and he had not asked Liberty to check the brakes for any reason.

On August 30, 2014, plaintiff was riding his motorcycle on New York State Highway 55. He was familiar with the roadway and was operating his bike within the speed limit. As plaintiff rode through a curve, he applied the brakes but "felt no pressure" in the front brake. Consequently, plaintiff lost control of the motorcycle and hit a ditch. The motorcycle landed on top of plaintiff, severely injuring him.

The motorcycle was towed from the scene. After plaintiff's insurance carrier deemed the bike "totaled," it was removed from the tow yard and sold at auction.

Plaintiff's complaint alleged products liability – manufacturing defect – and negligence claims against Harley-Davidson and Liberty respectively.[2] Plaintiff retained George Meinschein, P.E. as his expert witness. Meinschein thereafter authored three reports.

In preparation of his first report, Meinschein advised he had reviewed the accident report, plaintiff's deposition testimony, documents produced by Harley-

---

[2] Plaintiff dismissed all other claims prior to the summary judgment motion hearing.

A-5527-17T4

Davidson, including its owner's manual, aerial and street views of the accident scene, as well as photographs, measurements, and video recordings taken during his physical examination of the scene. He concluded that plaintiff's accident was caused "by a defect in the brake system that prevented [plaintiff] from slowing to a speed that would have allowed him to negotiate the subject curve on August 30, 2014 without incident."

The expert stated that the motorcycle was equipped with an anti-locking brake system (ABS) feature. He opined that the ABS feature was a design defect that caused the brake fluid to absorb moisture, reducing the motorcycle's braking ability and ultimately initiating the August 30, 2014 brake failure. He further concluded that an alternative design and manufacturing process would have corrected the defective ABS design. Meinschein also noted the motorcycle was included in Harley-Davidson's January 2018 recall of its motorcycles with the ABS feature. The recall was to correct the ABS defect, which allowed moisture to enter the brake fluid, causing contamination that could "increas[e] the risk of a crash."

Meinschein's second report responded to Harley-Davidson's supplemental interrogatory that advised plaintiff's motorcycle was not equipped with an ABS feature. The expert maintained that the photographs he reviewed of the

A-5527-17T4

motorcycle showed it had "speed sensors for the front and rear wheels," which were only found on motorcycles with an ABS feature.

Thereafter, an engineer for Harley-Davidson issued an expert report, opining that plaintiff's accident was unrelated to any ABS brake system failure because the "motorcycle was not equipped with ABS." He advised a motorcycle with ABS had additional hydraulic brake lines under the gas tank and the photographs taken of plaintiff's motorcycle after the accident did not show a hydraulic brake line. The engineer attributed the accident to "rider error."

In his third report, Meinschein conceded the motorcycle did not have the ABS feature. As a result, he withdrew his opinions regarding the ABS defect. He reiterated, however, that a brake system defect caused the accident, and an alternative design and manufacturing process would have corrected the defective brake system. In explaining his opinion, Meinschein stated:

> I did not observe any evidence of brake fluid leakage or defective front brake hoses, calipers, pads, or rotors in my review of the post-crash photographs of the subject motorcycle. As such, it is my opinion that the cause for the front brake failure described by [plaintiff] was a defect in the operation of the front brake master cylinder. It is my further opinion that [plaintiff's] testimony that he felt nothing, no pressure, when he applied the front brake and the absence of any visible post-crash defects in the front brake system is consistent with failure of a piston seal in the front brake master cylinder due to contamination of the brake fluid.

Contaminated brake fluid softens and swells the piston seals in the brake system and prevents the system from building pressure when the piston assembly is depressed. The first notice of brake fluid contamination typically occurs when the brakes fail if the contamination and resulting swelling of the internal rubber components of the master cylinder is not discovered during a routine maintenance procedure. As the subject motorcycle was serviced by [Liberty] fourteen days before the August 30, 2014 crash, it is my opinion that either the contaminated brake fluid was not discovered during that routine maintenance procedure or contaminated brake fluid was inadvertently introduced into the front brake master cylinder reservoir at that time.

. . . .

. . . Any contaminated brake fluid in the front brake system of the subject motorcycle would have been a Harley-Davidson product that would have been either the original brake fluid that was used in the subject motorcycle's manufacture or that which would have been added by [Liberty].

The odometer reading at the time of the August 16, 2014 service by [Liberty] is recorded on the corresponding work order as 14,995 miles. It is my opinion that in order to compensate for fluid level drop due to normal brake pad wear, the subject motorcycle's front brake fluid reservoir was topped off with either contaminated or incorrect Harley-Davidson brake fluid during the August 16, 2014 service by [Liberty].[3]

. . . .

---

[3] Plaintiff asserts the brake fluid in the motorcycle should have been changed every two years in accordance with Harley-Davidson's owner's manual.

A-5527-17T4

. . . The improper service provided by [Liberty] on August 16, 2014 was a causative factor in the August 30, 2014 crash and the subsequent injuries suffered by [plaintiff].

Defendants moved for summary judgment, alleging Meinschein's report was a net opinion as it was unsupported by any facts. Without an expert, Harley-Davidson argued plaintiff could not show a manufacturing defect existed at the time the motorcycle left the manufacturer. Liberty asserted plaintiff had not demonstrated a breach of duty as there was no evidence of any contaminated brake fluid.

In response, plaintiff argued that Meinschein's opinions were supported by the factual evidence. The expert had examined weather reports and photographs of the motorcycle, performed a physical examination of the accident site, and reviewed plaintiff's deposition testimony and Liberty's service records. The expert had ruled out all other possible causes of the brake failure. He also noted the recall notice, which described how contaminated brake fluid could cause a loss of brake function on the affected wheel.

As to Liberty, plaintiff argued the dealership's service employees failed to follow the servicing requirements in Harley-Davidson's owner's manual. Although plaintiff requested a complete check-up of his bike on each occasion

he brought it in for service, Liberty had not complied with plaintiff's request or the manufacturer's recommendations regarding brake fluid.

The motion judge concluded that because there was "no analysis," "no testing," and no "why's or where[fore's]," the report was "pure speculation and conjecture," and, therefore, a net opinion. As a result, the court granted the motions for summary judgment.

On appeal, plaintiff argues Meinschein's opinions were based on factual evidence and explained the causal connection between the contaminated brake fluid and the brake system malfunction.

We review a summary judgment order de novo, applying the same standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). To grant the motion, the evidence in the record must be "so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

Here, the trial court was "confronted with an evidence determination precedent to ruling on a summary judgment motion," and it properly addressed the evidence issue first. Townsend, 221 N.J. at 53 (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)). Our review "of the trial court's decision[] proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid. We review the determination of the expert report as net opinion for an abuse of discretion. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

N.J.R.E. 703 governs the admissibility of expert testimony.[4] It provides an expert opinion to be "grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts.'" Townsend, 221 N.J. at 53 (quoting Polzo v. Cty. of Essex, 196 N.J. 569, 583 (2008)).

The doctrine barring the admission of net opinions is a "corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's

---

[4] Defendants did not dispute Meinschein's qualifications to render an expert report. The judge also noted there was no dispute as to the expert's qualifications.

conclusions that are not supported by factual evidence or other data." Id. at 53-54 (alterations in original) (quoting Polzo, 196 N.J. at 583). The net opinion principle mandates that experts "give the why and wherefore" supporting their opinions, "rather than . . . mere conclusion[s]." Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). An expert must "explain a causal connection between the act or incident complained of and the injury or damages allegedly resulting therefrom." Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). Expert testimony that is "based merely on unfounded speculation and unquantified possibilities" should be barred. Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 300 (App. Div. 1990).

However, "[t]he net opinion rule is not a standard of perfection." Townsend, 221 N.J. at 54. An expert may ground an opinion in his or her personal experience and training. See State v. Townsend, 186 N.J. 473, 495 (2006) (finding the expert's opinion was not a net opinion due to her "education, training, and most importantly, her experience"); Rosenberg v. Tavorath, 352 N.J. Super. 385, 403 (App. Div. 2002) ("Evidential support for an expert opinion is not limited to treatises or any type of documentary support, but may include what the witness has learned from personal experience."). An opinion that may be subject to attack on cross-examination for not including other meaningful

considerations, does not make it a net opinion. Rosenberg, 352 N.J. Super. at 402 (citing Rubanick v. Witco Chem. Corp., 242 N.J. Super. 36, 55 (App. Div. 1990)); see also Glowacki v. Underwood Mem'l Hosp., 270 N.J. Super. 1, 16-17 (App. Div. 1994) (declining to strike an expert's testimony as a net opinion as "[a]ny shortcoming in his method of analysis was explored and it was for the jury to determine the weight his opinion should receive").

We turn to Meinschein's third, and final, report to determine its admissibility under N.J.R.E. 703. Meinschein first concluded "[t]he sudden and unexpected loss of braking ability as the subject motorcycle approached the curve where the August 30, 2014 crash occurred was caused by a failure of the front brake master cylinder." He arrived at this conclusion using factual evidence: his observation of the post-crash photographs of the motorcycle, and plaintiff's deposition testimony stating he felt no pressure when he applied the front brake.

Next, Meinschein explained "why" he thought there was a failure of the front brake master cylinder, which caused plaintiff's crash. See Townsend, 221 N.J. at 53-54; Buckelew, 87 N.J. at 524. He stated that plaintiff's description of not feeling any pressure when he applied the front brake before the crash, and a lack of evidence of "brake fluid leakage or defective brake hoses, calipers, pads,

or rotors," as observed in the photographs, was "consistent with failure of a piston seal in the front brake master cylinder due to contamination of the brake fluid." The expert explained that contaminated brake fluid causes a failure of the front brake, stating it "softens and swells the piston seal in the brake system and prevents the system from building pressure when the piston assembly is depressed." He found the contaminated brake fluid was either introduced when the motorcycle was manufactured or by Liberty during the August 2014 servicing.

Meinschein further concluded that the "brake failure and subsequent crash was caused by either the failure of [Liberty] to discover contaminated brake fluid during the August 16, 2014 routine maintenance procedure or by their addition of contaminated Harley-Davidson brake fluid into the front brake master cylinder reservoir at that time." The expert supported this conclusion with factual evidence, stating:

> The odometer reading at the time of the August 16, 2014 service by [Liberty] is recorded on the corresponding work order as 14,995 miles. It is my opinion that in order to compensate for fluid level drop due to normal brake pad wear, the subject motorcycle's front brake fluid reservoir was topped off with either contaminated or incorrect Harley-Davidson brake fluid during the August 16, 2014 service by [Liberty].

13

We are satisfied Meinschein did not present a report with "mere conclusion[s]." Townsend, 221 N.J. at 54. He provided a factual basis for both of his conclusions, drawing on his training, experience, and education for support. See Rosenberg, 352 N.J. Super. at 403. Therefore, it is not a net opinion. His conclusions, of course, are subject to cross-examination at trial and a jury can decide whether to accept or reject part or all of his opinions. See Rosenberg, 352 N.J. Super. at 402; see also Glowacki, 270 N.J. Super. at 16-17.

As a result of his conclusion that plaintiff's expert report was a net opinion, the trial judge granted defendants summary judgment. We vacate that ruling.

To prevail on a product liability claim under the New Jersey Products Liability Act (PLA), N.J.S.A. 2A:5C -1 to -11, a plaintiff must demonstrate three prima facie elements: "[1] the product was defective, [2] that the defect existed when the product left the manufacturer's control, and [3] that the defect proximately caused injuries to the plaintiff, a reasonably foreseeable or intended user." Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 97 (1999) (citations omitted).

"To prove both the existence of a defect and that the defect existed while the product was in the control of the manufacturer, a plaintiff may resort to direct

14

evidence, such as the testimony of an expert who has examined the product, or, in the absence of such evidence, to circumstantial proof." Id. at 98 (citations omitted). Additionally, "[a] plaintiff may [also] establish a defect by 'negat[ing] other causes of the failure of the product for which the defendant would not be responsible, in order to make it reasonable to infer that a dangerous condition existed at the time the defendant had control [of the product].'" Id. at 99 (third and fourth alterations in original) (quoting Scanlon v. Gen. Motors Corp., 65 N.J. 582, 593-94 (1974)). "[A] plaintiff does not have to negate all possible causes of failure, only those likely causes of failure." Ibid. (citing Scanlon, 65 N.J. at 594).

Here, plaintiff has presented expert opinions as to a manufacturing defect – contaminated brake fluid. A jury might also infer from the proffered circumstantial evidence that a defect existed while the motorcycle was in the control of Harley-Davidson. The motorcycle only had 14,995 miles on it at the time of plaintiff's accident. Plaintiff took the bike to Liberty for regular service and maintenance. Plaintiff had not repaired or modified the bike, nor had he installed any after-market parts. We are satisfied there was sufficient circumstantial evidence for a jury to infer that the front brake failure would not have occurred at this point in the motorcycle's lifespan absent a defect

attributable to Harley-Davidson. We consequently reverse and vacate the grant of summary judgment to Harley-Davidson.

In addressing the dismissal of the negligence claim against Liberty, we similarly find the trial judge erred in granting summary judgment to the dealership. Plaintiff contends Liberty was negligent in failing to service the motorcycle as he requested and by not following the maintenance instructions in the owner's manual.

As we have already stated, plaintiff produced Meinschein's expert report to support his claim against Liberty. The owner's manual required changing the brake fluid and flushing the brake system every two years. However, Liberty's service records do not reflect any work was performed on the bike's brake system during the service visits. Therefore, in viewing the evidence in a light most favorable to plaintiff, there is sufficient evidence to establish both that Liberty had a duty to change the brake fluid and that Liberty breached that duty. The expert report established the causal relationship between the breach of duty and plaintiff's resulting accident and damages.

We reverse and vacate the summary judgment order. We remand to the trial court for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-5527-17T4