**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1053-18T1

DANIEL MARTINEZ, A Minor,
By His Guardian Ad Litem,
NANCY MARTINEZ, and
NANCY MARTINEZ,
Individually,

      Plaintiffs-Appellants,

v.

CITY OF ELIZABETH
BOARD OF EDUCATION,

      Defendant-Respondent.

_____

Submitted December 4, 2019 – Decided February 3, 2020

Before Judges Whipple and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2064-16.

Icaza, Burgess, & Grossman, PC, attorneys for appellants (Douglas David Burgess, of counsel and on the briefs; Randi S. Greenberg, on the briefs).

Methfessel & Werbel, attorneys for respondent (William Bloom and Leslie Koch, on the brief).

PER CURIAM

Plaintiff Daniel Martinez[1] appeals from a September 27, 2018 order granting summary judgment to defendant after finding plaintiff's expert report constituted a net opinion. We affirm.

Plaintiff was injured at Halsey House-Elizabeth High School on March 27, 2015. When exiting the cafeteria through a set of doors, he pushed against the glass panel window, rather than utilizing the door or handle. The glass panel window, which contained reinforcing wire, broke, and plaintiff's right hand went through the broken wired window causing injuries requiring surgery.

Plaintiff filed suit against defendant, the Elizabeth Board of Education, on June 22, 2016. During discovery, plaintiff supplied an expert report from Terence J. Fischer, P.E., dated September 11, 2017. In his report, Fischer asserted the door in question (Door 12) had been replaced in 2014, and that the glass in Door 12 did not comply with applicable building codes or American National Standards Institute standards. Fischer opined the dangers of wired glass were widely known in the school industry, and that if defendant had

_____

[1] Plaintiff's guardian, Nancy Martinez, is also a plaintiff. For purposes of efficiency we only refer to Daniel as plaintiff in this opinion.

A-1053-18T1

apprised itself of this readily available information and replaced the wired glass with safety glass, plaintiff's injury would not have occurred.

In April 2018, after the end of discovery, defendant moved for summary judgment. Defendant argued Fischer's expert opinion was inapplicable because Door 12 was the original door installed in 1976, and since it had never been replaced, the contention the door did not meet building codes updated in 2003 was irrelevant. Fischer then submitted a subsequent, supplemental report, where he acknowledged that Door 12 was not replaced, that the wired glass met the codes in effect in 1976, and that building codes did not require retrofitting to meet updated safety standards. However, Fischer opined the dangers of wired glass were widely known to those in the school industry when the doors were originally installed, and, given the availability of the information pertaining to the dangers of wired glass, the failure of defendant to replace Door 12 with safety glass prior to the date of loss "created an unnecessary exposure to hazard for its students and employees," and thus, his ultimate conclusion remained unchanged.

The motion judge conducted a Rule 104 hearing on the admissibility of plaintiff's expert's opinion. During the hearing, Fischer testified regarding his qualifications as a forensic engineer. Fischer had never previously issued a

3

report in a case involving wired glass, and for this report he relied on the 2004 article entitled "Shattering the Myth of Wired Glass" by Greg Able. Fischer testified the article discussed the inadequacies of wired glass—specifically how wired glass is effective for fire safety but is not necessarily impact resistant. While standards for the required "strength" of glass panes were upgraded in New Jersey in 2006, the New Jersey Building Code did not require retrofitting of existing doors.

Notably, plaintiff could not qualify the Able writing as reliable or as a learned treatise, and Fischer testified that until he came upon it in preparing his report, he was completely unfamiliar with Able or the periodical in which the article appeared. Fischer conceded that until the middle of the 1990s, traditional wired glass was the only fire-rated glass available, that many building and fire officials believe the incorporation of wire makes glass stronger, and that wired glass manufacturers were still permitted to market wired glass as safety glazing. However, he concluded within a reasonable degree of certainty, it was negligent for the defendant not to have replaced the glass in the door, as the door was a dangerous condition.

The judge found Fischer's opinion that defendant was negligent was not accompanied by objective support and was therefore a net opinion. The judge

determined "there was no record proof that any teacher, principal, administrator, or member of the Board of Education had actual knowledge of the potential danger of the door based upon post-installation studies or [of] that door's glass breaking and causing injuries previously." Further, the court stated there was no evidence of constructive knowledge about the danger the door presented. Without an expert to attach liability to the defendant, the motion judge concluded that plaintiff could not sustain a claim under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:4-1(a). For this reason, the court granted defendant's motion for summary judgment. This appeal followed.

On appeal, plaintiff argues the motion judge erred in finding Fischer's opinion was a net opinion, and that the record supported a finding defendant had knowledge of the dangerous condition. We disagree.

I.

"[W]e apply an abuse of discretion standard to decisions made by [] trial courts relating to matters of discovery." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (citing Bender v. Adelson, 187 N.J. 411, 428 (2006)). "We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J.

Super. 68, 80 (App. Div. 2005) (citing <u>Payton v. N.J. Tpk. Auth.</u>, 148 N.J. 524, 559 (1997)).  "[W]e apply the same deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard."  <u>Pomerantz Paper Corp.</u>, 207 N.J. at 371.

"When the legal conclusions of a trial court on a <u>Rule</u> 4:46-2 summary judgment decision are reviewed on appeal, '[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]'" and therefore, we review an issue of law de novo. <u>McDade v. Siazon</u>, 208 N.J. 463, 473 (2011) (alteration in original) (quoting <u>Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.</u>, 202 N.J. 369, 382-83 (2010)).

"When . . . a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'"  <u>Townsend v. Pierre</u>, 221 N.J. 36, 53 (2015) (quoting <u>Estate of Hanges</u>, 202 N.J at 384-85).  Our review of the trial court's decision "proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court."  <u>Ibid.</u> (citing <u>Estate of Hanges</u>, 202 N.J. at 385).

Where an expert's findings are not supported by proper factual evidence, it is a net opinion.  <u>Id.</u> at 58-59.  An expert's opinion "is excluded if it is based

6

merely on unfounded speculation and unquantified possibilities." Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997) (quoting Vuocolo v. Diamond Shamrock Chem. Co., 240 N.J. Super. 289, 300 (App. Div. 1990)). Because a jury may give significant weight to expert testimony, "a trial court must ensure that an expert is not permitted to express speculative opinions or personal views that are unfounded in the record." Townsend, 221 N.J. at 55. An expert must provide the "why and wherefore" of his or her opinion and failing to do so renders the expert "nothing more than an additional juror." Jimenez v. G.N.O.C., Corp., 286 N.J. Super. 533, 540 (App. Div. 1996). If the trial court determines the expert's report is a net opinion, the testimony of the expert is inadmissible. Buckelew v. Grossbard, 87 N.J. 512, 524 (1981). "[A]n expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered." Pomerantz Paper Corp., 207 N.J at 372.

We have rejected a trial court's reliance on an expert's personal "rule of thumb" regarding fair market valuation as violating N.J.R.E. 703. Alpine Country Club v. Borough of Demarest, 354 N.J. Super. 387, 395-96 (App. Div. 2002) (holding that an expert's "rule of thumb" approach was neither based on any accepted methodology used by other appraisers nor referenced or adopted

A-1053-18T1

by authoritative texts or case law). Applying these standards, we have concluded that a trial court may not rely on expert testimony that lacks an appropriate factual foundation. Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 323-25 (App. Div. 1996); see also Suanez v. Egeland, 353 N.J. Super. 191, 203 (App. Div. 2002) (finding the trial court erred in admitting expert testimony because the expert demonstrated no foundation established by scholarly literature or persuasive judicial decisions).

As for Fischer's initial report, the bulk of the report is spent reviewing the particulars of the accident. Reaching the issue at hand, Fischer asserts, with little support, that wired glass is a common sight in schools, businesses, and hotels, serving as a fire retardant by preventing the glass from shattering under heat stress but making the glass more susceptible to breakage. Fischer then cites to "Shattering the Myth of Wired Glass," which says children and young adults are injured every year by wired glass panels where safety glass should be used instead. Fischer states that wired glass does not meet the standards found in the 2003 International Building Code nor the 2006 International Building Code, which would require safety glazing to control how the glass breaks.

Fischer calculated that the force created by plaintiff when his hand impacted the glass would have been less than the force necessary to shatter glass

with safety glazing. In his conclusion, Fischer determined if the window in Door 12 was made of safety glass, the injury would not have occurred. He also concluded

> [defendant] failed to ensure the subject windows were compliant with applicable federal regulations, building codes and industry safety standards. The [defendant] failed to recognize the dangers of wired glass in impact areas in light of the information available on the internet, in trade publications, and other sources, not to mention the number of injuries sustained by exposure to wired glass windows.

In essence, Fischer's determination is defendant did not comply with applicable safety standards and should have been on notice that the wired glass was dangerous. While he gives his basis for the determination that if there was safety glass the injury would not have occurred, his basis for liability was that defendant did not replace the glass with proper safety glass.

As for Fischer's later, supplemental report, he acknowledges Door 12 had not been replaced since its initial installation in 1976, and thus was not in violation of the applicable building codes. However, his conclusion remained unchanged, and he still concluded defendant "failed to maintain the subject facility in a reasonably safe condition by not replacing the subject windows with properly rated safety glass."

The trial court considered Fischer's conclusion a net opinion because there was no code requiring defendant to retrofit the door with safety glass, yet, without further support, Fischer opined it was unreasonable not to retrofit the door. Fischer's initial conclusion was based on the mistaken belief defendant had replaced Door 12 in 2014, but failed to install glass which met the applicable safety standards; however, it was later determined that this was not the case, and the doors installed in 1976 were not in violation of safety standards. For this reason, Fischer's conclusion the door did not meet safety standards is not grounded in a factual basis. See Townsend, 221 N.J. at 58.

In Fischer's initial report, the noncompliance with safety standards provides the "why and wherefore" to support his opinion. However, when it was determined the defendant was in fact compliant, Fischer did not provide additional reasoning and explanation for why the wired glass window was dangerous. He offers no industry standard or custom to show defendant was "failing to maintain the subject property in a reasonably safe condition" by not retrofitting the windows. See Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 411-12 (2014) (stating industry standards, while not conclusive, may be used as evidential support for an expert's conclusions on standard of care).

## II.

We now review the entry of summary judgment. Under the TCA, a public entity is immune from liability except for an "injury proximately caused by an act or omission of a public employee," N.J.S.A. 59:2-2, an injury caused by a dangerous condition of its property, N.J.S.A. 59:4-2, or an injury caused by its failure to provide emergency signals, N.J.S.A. 59:4-4. To succeed in this claim, plaintiff must satisfy the requirements of N.J.S.A. 59:4-2, which states:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

A "dangerous condition" is defined in the TCA as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).

Thus, to hold a defendant liable under this statute, plaintiff must prove: 1) that a dangerous condition existed; 2) that the condition created a foreseeable risk of the kind of injury that occurred; and 3) that the dangerous condition proximately caused the injury. Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998). Plaintiff must also prove either that defendants created the dangerous condition, or that they had actual knowledge or constructive notice of the dangerous condition for a sufficient time prior to the injury to eliminate the danger. N.J.S.A. 59:4-2(a)-(b); see also Carroll v. N.J. Transit, 366 N.J. Super. 380, 386-87 (App. Div. 2004). Lastly, plaintiff must prove the defendant's action or inaction with respect to the dangerous condition was palpably unreasonable. N.J.S.A. 59:4-2; see also Garrison, 154 N.J. at 286.

Considering these requirements, and after reviewing the record, we agree with the motion judge that plaintiff fails to meet the standards of the TCA. Plaintiff did not introduce evidence that the door or panel was a dangerous

A-1053-18T1

condition of property, and plaintiff did not show defendant had notice of the dangers of wired glass.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13